Sangye Ince-Johannsen, OSB # 193827
David T. Woodsmall, OSB # 240631
WESTERN ENVIRONMENTAL LAW CENTER
120 Shelton McMurphey Boulevard, Suite 340
Eugene, Oregon 97401
sangyeij@westernlaw.org
woodsmall@westernlaw.org
541.778.6626
971.285.3632

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

### MEDFORD DIVISION

| | |
|---|---|
| **KLAMATH-SISKIYOU WILDLANDS CENTER**, **OREGON WILD**, and **CASCADIA WILDLANDS**,<br><br>*Plaintiffs*,<br><br>v.<br><br>**DOUGLAS JAMES BURGUM** in his official capacity as Secretary of the Interior, **U.S. FISH & WILDLIFE SERVICE**, and **U.S. BUREAU OF LAND MANAGEMENT**,<br><br>*Defendants*;<br><br>and<br><br>**MURPHY COMPANY,**<br><br>*Applicant-Defendant-Intervenor.* | Case No. 1:25-cv-2296-CL<br><br>**DECLARATION OF SANGYE INCE-JOHANNSEN** |

I, Sangye Ince-Johannsen, hereby declare as follows:

1.     I am counsel for Klamath-Siskiyou Wildlands Center, Oregon Wild, and Cascadia Wildlands in this matter. I make this declaration based on personal knowledge. I am competent to testify to the matters declared here if necessary.

2.     On January 28, 2026, I reviewed an email from Christian Carrara, counsel for Federal Defendants, providing a status update on the Project's timber sales. In that email, Mr. Carrara confirmed that for the "Rotor's Up" timber sale, "[t]he final contract is still being assembled." He further stated that for the "King Graves" timber sale, BLM was "assembling final contract package" with a plan to auction the sale on March 26, 2026.

3.     On January 29, 2026, I reviewed correspondence sent by my colleague David Woodsmall to counsel for Federal Defendants and Proposed Defendant-Intervenor. In that correspondence, Mr. Woodsmall sought clarification regarding the status of operations at the Paul's Payoff timber sale, noting conflicts between earlier declarations and updates from BLM indicating that tree felling had already begun.

4.     On February 2, 2026, I reviewed an email response from Julie Weis, counsel for Murphy Company. In that email, Ms. Weis confirmed that Murphy Company was "falling trees currently in preparation for the work that will commence in April."

5.     On February 9, 2026, I reviewed a status update provided via email by Mr. Carrara. Mr. Carrara's email confirmed that logging or right-of-way clearance had already been completed or was ongoing in multiple units. Specifically, Mr. Carrara identified that work was finished or ongoing in northern spotted owl nesting, roosting, and foraging (NRF) habitat, including in Unit 34-1D and rights-of-way. He further identified that work was finished or ongoing in northwestern pond turtle overwintering habitat, including in Units 1-4 and 34-1D.

6.     Also on February 9, 2026, I reviewed an email from Christopher Griffith,

counsel for Murphy Company, providing further details on the scope of activities. Mr. Griffith listed six specific units where cutting was finishing up: Units 35-12, 25-9, 26-2, 27-5, 34-1D, and 1-4. Mr. Griffith estimated that Murphy Company planned to complete this cutting within approximately 10 days.

7. On February 12, 2026, I reviewed a subsequent email from Mr. Griffith stating that Murphy Company "will not resume cutting more trees on the sale until May 1" after concluding the immediate operations described in his February 9 update.

8. On February 13, 2026, I participated in a conferral call with counsel for the parties and proposed intervenors. During that call, Dominic Carollo, counsel for American Forest Resource Council and Association of O&C Counties, relayed information regarding the operations of Boise Cascade, a member of the American Forest Resource Council. Mr. Carollo indicated that while roadside vegetation management is ongoing, logging within harvest units would likely not occur until at least May 1, 2026. Following that call, I reviewed an email from Mr. Carollo stating he had "touch[ed] base with Boise" and was "authorized to share" that the "2.7 miles of new road construction is not part of the roadside vegetation management work that is currently ongoing." He further stated that Boise "does not plan to initiate the 2.7 miles of new road construction work until after May 1, 2026."

9. Based on this correspondence and conferral, it is my understanding that while operations have temporarily paused or are limited to roadside management, Murphy Company and Boise Cascade intend to resume logging and road construction operations in the Project area, including in habitat for the northern spotted owl and northwestern pond turtle, as early as May 1, 2026.

10. Also on February 13, 2026, I sent an email to counsel for Federal Defendants informing them of Plaintiffs' intent to file the Motion for Preliminary Injunction. As a courtesy, I included counsel for Proposed Intervenor Murphy Company and

counsel for American Forest Resource Council and Association of O&C Counties on this correspondence, although they are not yet parties to the litigation. In that email, I requested their positions on the motion and the request for an expedited hearing. I further stated that Plaintiffs are proceeding without requesting an expedited briefing schedule, with the understanding that counsel would provide advance notice should their clients' operational plans change. Counsel for Federal Defendants responded that they oppose the motion but do not oppose the request for an expedited hearing. Counsel for Murphy Company responded that they oppose both the motion and the request for an expedited hearing. Counsel for American Forest Resource Council and Association of O&C Counties responded that they oppose the motion and reserve taking a position on the hearing request.

11. Attached hereto as Exhibit A is a true and correct copy of the U.S. Fish and Wildlife Service's Revised Recovery Plan for the Northern Spotted Owl (*Strix occidentalis caurina*) (June 28, 2011). I obtained this document from the U.S. Fish and Wildlife Service's Environmental Conservation Online System, https://ecos.fws.gov/ecp/species/1123#recovery, downloaded February 12, 2026.

12. Attached hereto as Exhibit B is a true and correct copy of the U.S. Fish and Wildlife Service's Biological Opinion on the Medford District of the Bureau of Land Management's FY23 Batch of Projects (July 3, 2023). I obtained this document from the U.S. Fish and Wildlife Service's Environmental Conservation Online System, https://reports.ecosphere.fws.gov/fwswebservices/downloadfile?docid=1802026, downloaded August 10, 2025.

13. Attached hereto as Exhibit C is a true and correct copy of the U.S. Bureau of Land Management, Medford District, Grants Pass Field Office's Revised Environmental Assessment for the Last Chance Forest Management Project (May 2025). I obtained this document from the U.S. Bureau of Land Management's National NEPA Register, https://eplanning.blm.gov/Documents/?id=2eb004d1-a7f2-

f011-8407-001dd806295a&spid=1b682883-a8f2-f011-8407-001dd80c29f3, downloaded August 10, 2025.

14. Attached hereto as Exhibit D is a true and correct copy of Appel, Cara L., Damon B. Lesmeister, Adam Duarte, Raymond J. Davis, Matthew J. Weldy, and Taal Levi. 2023. "Using Passive Acoustic Monitoring to Estimate Northern Spotted Owl Landscape Use and Pair Occupancy." Ecosphere 14(2): e4421. https://doi.org/10.1002/ecs2.4421. I obtained this document from the web, https://esajournals.onlinelibrary.wiley.com/doi/epdf/10.1002/ecs2.4421, downloaded September 7, 2025.

15. Attached hereto as Exhibit E is a true and correct copy of the U.S. Fish and Wildlife Service's 2012 Revision of the 2011 NSO Survey Protocol, "Protocol for Surveying Proposed Management Activities That May Impact Northern Spotted Owls" (January 9, 2012). I obtained this document from the U.S. Fish and Wildlife Service website, https://www.fws.gov/media/protocol-surveying-proposed-management-activities-may-impact-northern-spotted-owls, downloaded September 7, 2025.

16. Attached hereto as Exhibit F is a true and correct copy of Rosenberg, Daniel, Jennifer Gervais, David Vesely, Susan Barnes, Lauri Holts, Robert Horn, Roberta Swift, Laura Todd, Chris Yee. Conservation Assessment of the Western Pond Turtle in Oregon (*Actinemys marmorata*), Version 1.0 (November 2009). I obtained this document from the web, https://coveredactions.deltacouncil.ca.gov/services/download.ashx?u=1013a4f1-e068-4082-ab2b-6e2df2749610, downloaded February 13, 2026.

17. Attached hereto as Exhibit G is a true and correct copy of the U.S. Fish and Wildlife Service document, "Special Status Assessment Report for Northwestern Pond Turtle (*Actinemys marmorata*) and Southwestern Pond Turtle (*Actinemys pallida*)", Version 1.1 (April 2023). I obtained this document from the U.S. Fish and

Declaration of Sangye Ince-Johannsen, No. 1:25-cv-2296-CL                                    4

Wildlife Service's Environmental Conservation Online System, https://iris.fws.gov/APPS/ServCat/DownloadFile/241273, downloaded February 12, 2026.

18. Attached hereto as Exhibit H is a true and correct copy of the Oregon Department of Fish and Wildlife document, "Guidance for Conserving Oregon's Native Turtles including Best Management Practices" (2015). I obtained this document from the State Library of Oregon's Digital Collections repository, https://digitalcollections.library.oregon.gov/nodes/view/133376, downloaded February 13, 2026.

19. Attached hereto as Exhibit I is a true and correct copy of the U.S. Bureau of Land Management, Medford District Office, Submission of the Medford BLM FY 23 Batch Biological Assessment to the U.S. Fish and Wildlife Service (electronically signed April 24, 2023). I obtained this document via email from counsel for plaintiffs in *Klamath-Siskiyou Wildlands Center v. U.S. Bureau of Land Management*, 1:24-cv-01930 (D. Or.), where it was included in the Administrative Record lodged with the Court, Dkt. No. 27 (July 17, 2025).

20. Attached hereto as Exhibit J is a true and correct copy of the U.S. Bureau of Land Management, Medford District, Grants Pass Field Office's Environmental Assessment for the Last Chance Forest Management Project (September 2024). I obtained this document from the U.S. Bureau of Land Management's National NEPA Register, https://eplanning.blm.gov/Documents/?id=2eb004d1-a7f2-f011-8407-001dd806295a&spid=1b682883-a8f2-f011-8407-001dd80c29f3, downloaded August 10, 2025.

21. Attached hereto as Exhibit K is a true and correct copy of the U.S. Bureau of Land Management, Medford District, Grants Pass Field Office's Decision Record #1 for "Paul's Payoff" and "Rotor's Up" Timber Sales (May 2025). I obtained this document from the U.S. Bureau of Land Management's National NEPA Register,

Declaration of Sangye Ince-Johannsen, No. 1:25-cv-2296-CL                                    5

https://eplanning.blm.gov/Documents/?id=2eb004d1-a7f2-f011-8407-001dd806295a&spid=1b682883-a8f2-f011-8407-001dd80c29f3, downloaded August 10, 2025.

22. Attached hereto as Exhibit L is a true and correct copy of the U.S. Bureau of Land Management's Southwestern Oregon Record of Decision and Approved Resource Management Plan (August 2016). I obtained this document from the U.S. GovInfo document repository, https://www.govinfo.gov/app/details/GOVPUB-I53-PURL-gpo82099, downloaded February 12, 2026.

23. Attached hereto as Exhibit M is a true and correct copy of the U.S. Bureau of Land Management's Finding of No Significant Impact for the Last Chance Forest Management Project (May 2025). I obtained this document from the U.S. Bureau of Land Management's National NEPA Register, https://eplanning.blm.gov/Documents/?id=2eb004d1-a7f2-f011-8407-001dd806295a&spid=1b682883-a8f2-f011-8407-001dd80c29f3, downloaded February 13, 2026.

24. I declare under penalty of perjury that the foregoing is true and correct.

Executed on February 13, 2026, in Ashland, Oregon.



Sangye Ince-Johannsen, OSB # 193827

Attorney for Plaintiffs