DOMINIC M. CAROLLO, OSB #093057
NOLAN G. SMITH, OSB #215034
AUDREY F. BOYER, OSB #106560
Carollo Law Group
Mail:   P.O. Box 2456
        Roseburg, OR 97470
Office: 2315 Old Highway 99 South
        Roseburg, OR 97471
Telephone: (541) 957-5900
Fax: (541) 957-5923
Email: dcarollo@carollolegal.com
Email: nsmith@carollolegal.com
Email: aboyer@carollolegal.com

SARA GHAFOURI, OSB #111021
American Forest Resource Council
700 N.E. Multnomah, Suite 320
Portland, Oregon 97232
Telephone: (503) 222-9505
Fax: (503) 222-3255
Email: sghafouri@amforest.org
*Attorneys for Proposed Defendant-Intervenors*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF OREGON**
**MEDFORD DIVISION**

| | |
|---|---|
| **KLAMATH-SISKIYOU WILDLANDS CENTER, OREGON WILD, and CASCADIA WILDLANDS,** <br><br> Plaintiffs, <br><br> vs. <br><br> **DOUGLAS JAMES BURGUM in his official capacity as Secretary of the Interior, U.S. FISH & WILDLIFE SERVICE,** and **U.S. BUREAU OF LAND MANAGEMENT,** <br><br> Defendants, <br><br> **MURPHY COMPANY**, <br><br> Proposed Defendant-Intervenor, <br><br> and | Civil Case No. 1:25-cv-02296-CL <br><br> **[PROPOSED] DEFENDANT-INTERVENORS' MOTION TO INTERVENE AND MEMORANDUM IN SUPPORT** <br><br> THE HONORABLE MARK D. CLARKE |

[PROPOSED] DEFENDANT-INTERVENORS' MOTION TO INTERVENE AND
MEMORANDUM IN SUPPORT - 1

| | |
|---|---|
| **AMERICAN FOREST RESOURCE COUNCIL,** an Oregon non-profit corporation, and **ASSOCIATION OF O&C COUNTIES,** an unincorporated Association, <br><br> Proposed Defendant-Intervenors. | |

## LR 7-1(A) CERTIFICATION

Pursuant to Local Rule 7-1, Proposed Intervenors American Forest Resource Council (AFRC), and the Association of O&C Counties (AOCC) (collectively, Proposed Intervenors) certify that undersigned counsel conferred with counsel for Plaintiffs and Federal Defendant on this motion. Federal Defendants have advised that they take no position on this motion. Counsel for Plaintiffs have reserved taking a position until they have had an opportunity to review this motion.

## MOTION

Pursuant to Federal Rule of Civil Procedure (FRCP) 24, Proposed Intervenors respectfully move to intervene as defendants in this case challenging the Bureau of Land Management's (BLM) approval of the Last Chance Forest Management Project (Last Chance Project) and the U.S. Fish and Wildlife Service's (FWS) accompanying Biological Opinion (BiOp).

This Court should grant Proposed Intervenors' motion to intervene as of right under FRCP 24(a)(2) because they satisfy all four intervention factors. First, this motion is timely because it is early in the litigation. Plaintiffs filed their complaint on December 9, 2025 (ECF No. 1), and Federal Defendants filed their answer on February 13, 2026 (ECF No. 15). Proposed Intervenor Murphy Company filed its own Motion to Intervene on January 28, 2026 (ECF No. 8). Because no proposed briefing schedule is in place, this leaves ample time for Proposed

[PROPOSED] DEFENDANT-INTERVENORS' MOTION TO INTERVENE AND
MEMORANDUM IN SUPPORT - 2

Intervenors to be permitted to intervene in this case without prejudice or undue inconvenience to any party or the Court. Second, Proposed Intervenors have a significant protectable interest in this litigation. Proposed Intervenor AFRC represents forest products manufacturers and affiliated companies who are frequent purchasers of timber sales on the BLM-administered lands in southwestern Oregon. AFRC members Boise Cascade and Murphy Company have purchased two timber sales authorized pursuant to the Last Chance Project. Multiple of AFRC's members' processing plants will likely receive the timber scheduled for harvest under the Last Chance Project. AOCC represents and advocates for counties in western Oregon that receive timber receipts through commercial harvest of the BLM lands administered under the Oregon and California Railroad and Coos Bay Wagon Road Grant Lands Act of 1937 (O&C Act). 43 U.S.C. §§ 2601, 2605. Under the O&C Act, O&C counties are entitled to 75 percent of the timber receipts from sales offered on O&C lands. 43 U.S.C. § 2605. The Last Chance Project will generate vital timber receipts that will help support the social and economic well-being of these rural counties. Third, Proposed Intervenors' significant protectable interests will be adversely affected if Plaintiffs are successful in enjoining the commercial harvest activities authorized by the Last Chance Project. Fourth and finally, Federal Defendants do not adequately represent Proposed Intervenors' interests in this litigation because their responsibilities are broader than the movants' local, regional, and business interests. The Last Chance Project was originally authorized in September of 2024 before the BLM agreed to conduct further NEPA analysis after Plaintiffs filed a lawsuit challenging the Project. Proposed Intervenors seek to defend the Last Chance Project and move it forward. Thus, intervention as of right is warranted.

[PROPOSED] DEFENDANT-INTERVENORS' MOTION TO INTERVENE AND
MEMORANDUM IN SUPPORT - 3

In the alternative, this Court may grant permissive intervention under FRCP 24(b) because Proposed Intervenors' claims and defenses share common questions of law and fact with the main action here.

This motion is supported by the accompanying Memorandum and the Declarations of Andy Geissler and Douglas County Commissioner Tim Freeman, and a proposed answer.[1]

## MEMORANDUM

### I. INTRODUCTION.

Pursuant to FRCP 24, Proposed Intervenors respectfully move to intervene as defendants. Proposed Intervenors have significant protectable economic, social, and ecological interests in ensuring active forest management occurs in ways that benefit local communities in Oregon. These largely rural communities depend on healthy forests for a wide range of uses, including timber production. Plaintiffs' lawsuit seeks a permanent injunction and vacatur of the Last Chance Project. Plaintiffs specifically seek to prohibit commercial harvest activities essential for recouping value from lands designated for harvest by the 2016 Southwestern Oregon Resource Management Plan (2016 RMP), as well as commercial activities which will speed the development of habitat for the Northern Spotted Owl (NSO) and reduce the risk and severity of wildfire. ECF No. 1 ¶¶ 75—79.

The Last Chance Project authorizes commercial timber harvest on 8,240 acres and fuels reduction treatments on 3,446 acres. Nearly the entire project area consists of O&C Act lands in Douglas, Jackson, and Josephine counties. The lands slated for commercial treatment under the Last Chance Project are located within the 2016 RMP's Harvest Land Base (HLB) land use

---

[1] If this Court does not rule on movants' motion prior to the due date for a response to Plaintiffs' pending Motion for Preliminary Injunction (ECF No. 16), movants intend to file a proposed response to the motion.

[PROPOSED] DEFENDANT-INTERVENORS' MOTION TO INTERVENE AND
MEMORANDUM IN SUPPORT - 4

allocation—which are lands allocated for sustained-yield forest management—and the 2016 RMP's Late Successional Reserve (LSR) and Riparian Reserve (RR) land use allocations, where commercial treatments are used to promote the development of NSO habitat and to address the loss of habitat from fire and other disturbances. The 2016 RMP requires that the BLM harvest timber from the HLB in the amount proscribed by the Allowable Sale Quantity (ASQ) and also requires that the BLM's Medford District apply commercial treatments to at least 17,000 acres of LSR-Dry lands per decade. ECF 17-3 (Last Chance Project Environmental Assessment) at 8, 10.

The O&C Act requires that timber from O&C lands be harvested for "permanent forest production, and the timber thereon shall be sold, cut, and removed in conformity with the princip[le] of sustained yield for the purpose of providing a permanent source of timber supply[.]" 43 U.S.C. § 2601. Seventy-five percent of the revenue generated from the O&C lands go to the counties where the O&C lands are located. 43 U.S.C. §§ 2601, 2605; Decl. of Tim Freeman (Freeman Decl.) ¶ 2.

AFRC's members are frequent purchasers of timber sales in western Oregon on the BLM-administered lands in the Medford District. Decl. of Andy Geissler (Geissler Decl.) ¶ 18. Additionally, AFRC advocates for the BLM to authorize more treatments in HLB, LSR, and RR, as directed by the 2016 RMP. *Id*. ¶¶ 5, 16. AOCC represents counties that depend on the BLM managing O&C lands on a sustained-yield basis to support jobs and local economies, essential public services, and healthy resilient forests. Freeman Decl. ¶¶ 4, 13. The Last Chance Project is an example of necessary forest management actions located on O&C lands long supported by AOCC. *Id*. ¶ 11.

Proposed Intervenors have concrete interests in the Last Chance Project that would be adversely affected if the project were vacated or delayed. This motion is timely, and the other

parties do not adequately represent Proposed Intervenors. Therefore, this Court should grant Proposed Intervenors' motion for intervention as of right under FRCP 24(a)(2). In the alternative, this Court may grant Proposed Intervenors' request for permissive intervention under FRCP 24(b).

II.     INTERESTS OF INTERVENORS.

      A.  American Forest Resource Council.

AFRC is a regional trade association whose purpose is to advocate for sustained-yield timber harvests on public timber lands throughout the West to enhance forest health and resistance to fire, insects, and disease. Geissler Decl. ¶ 3. AFRC's members are frequent purchasers of timber sales offered by the BLM, particularly on the BLM-administered land in the Medford District. *Id*. ¶¶ 6, 18.

For decades, AFRC has served its membership by promoting active management to attain productive public forests, protect adjoining private forests, and assure community stability. *Id.* ¶ 3. AFRC frequently participates in the planning, environmental analysis, and decision-making processes for the BLM's projects, helping to ensure that projects adhere to the applicable resource management plans and governing federal legislation, including here with the Last Chance Project. *Id.* ¶¶ 4, 16, 24. In its comments and discussions with the BLM, AFRC stressed the importance of active forest management for meeting the objectives and direction of the 2016 RMP, emphasizing the direction for commercial treatment. *Id*. ¶ 16, Exs. A-C.

In planning the Last Chance Project, the BLM determined that the project was necessary to satisfy the management directives of the 2016 RMP. *Id.* ¶¶ 12—13. A permanent injunction and vacatur of the Last Chance Project would foreclose the BLM's ability to *attempt* to satisfy the Fiscal Year (FY) 2026 through 2028 ASQ, inhibit the BLM from applying sustained-yield

management directives on lands designated HLB pursuant to the RMP, and would prohibit the BLM from carrying out the RMP's objectives for improving stand conditions in LSR and RR via commercial harvest. Reducing the volume of the BLM timber available for harvest in this manner would negatively affect AFRC and its members, who have a strong interest in maintaining the economic vitality of rural southwestern Oregon counties and the availability of family-wage jobs that the forest products industry provides. *Id*. ¶¶ 16—22.

### B. Association of O&C Counties.

AOCC represents counties in western Oregon that host 2.1 million acres of O&C lands. Freeman Decl. ¶ 4. AOCC was formed in 1925 as an advocate for the Oregon counties with a vested interest in how the O&C lands are managed. *Id*. Advocacy by AOCC resulted in legislation in 1926 and again in 1937 with passage of the O&C Act that is still the governing law guiding management of the O&C lands today. *Id*. Recent advocacy by AOCC also resulted in modifying the percent share of timber receipt revenues due to O&C counties. On O&C lands, Congress sought to compensate counties for the reconveyance of the lands back to the federal government. 43 U.S.C. § 2605. Originally, counties were supposed to be owed 75 percent of the timber receipts generated from O&C lands; 50 percent of timber receipts were immediately allocated to the counties, and an additional 25 percent of receipts were to be allocated (for a total of 75 percent) after the United States Treasury was reimbursed for charges against the Oregon and California land-grant fund. Freeman Decl. ¶ 5; 43 U.S.C. § 2605. However, in 1982, Congress limited O&C counties to only *50 percent* of shared receipts despite the Treasury having been fully reimbursed. *Id*. The FY2026 Interior Appropriations Bill corrected this limitation. Now, thanks to AOCC's advocacy, counties are once again entitled to 75 percent of the timber receipts generated from the O&C lands. *Id*. AOCC has been, and remains, active in all legislation

[PROPOSED] DEFENDANT-INTERVENORS' MOTION TO INTERVENE AND
MEMORANDUM IN SUPPORT - 7

and all administrative actions regarding the management of O&C lands for nearly 100 years—a testament to the importance of these lands to the health and wellbeing of western Oregon communities. *Id*. ¶ 4.

AOCC is committed to the social and economic wellbeing of western-Oregon counties and communities, and the health and productivity of federal O&C lands. *Id.* ¶ 6. AOCC advocates for sustained-yield management of the O&C lands, as required by federal law under the O&C Act, to protect and support jobs and local economies, essential public services, and healthy resilient forests. *Id*. However, federal timber harvests have dropped precipitously, and O&C receipts have declined proportionately. *See id*. ¶¶ 7—8. To make up for this decline, Congress authorized payments under the Secure Rural School Act (SRS). *Id.* ¶ 8. Unfortunately, Secure Rural School payments do not match historic receipts from O&C lands, such that it is not a suitable replacement for AOCC members. *Id*. Moreover, SRS reauthorizations are unreliable and subject to the whim of Congress, making it an unsuitable safety net. *Id.* ¶¶ 8—9. SRS was unauthorized for 2024 and much of 2025, until—through significant effort—Congress reauthorized SRS in December of 2025. *Id*. ¶ 8. The reauthorization cemented counties' election choice for 2024 and 2025 but starting in FY2026 counties will be free to elect to receive shared timber receipts under the O&C Act, rather than an SRS payment for O&C lands. It is expected that, for FY2026 and beyond, AOCC members will choose to take the O&C Act's shared timber receipts rather than the SRS payment for BLM lands due to the increased 75 percent allocation. *Id*. ¶ 9. If AOCC's members elect to receive shared receipts, or are required to receive shared receipts due to a failure to reauthorize SRS, every project which generates receipts has a significant impact on the level of funding provided to AOCC's members.

[PROPOSED] DEFENDANT-INTERVENORS' MOTION TO INTERVENE AND
MEMORANDUM IN SUPPORT - 8

The Last Chance Project is instrumental to the BLM's satisfaction of the demands of the O&C Act and will help generate important timber receipts through commercial harvest activities. *Id.* ¶ 11. Those timber receipts will help AOCC members' school funds and generate much-needed economic activity. *Id.* ¶¶ 10—16.

### III.  ARGUMENT.

#### A.  Standards for Intervention.

A party may intervene as a matter of right when: (1) the applicant's motion is timely; (2) the applicant asserts an interest relating to the property or transaction that is the subject of the action; (3) the applicant is so situated that, without intervention, the disposition of the action may, as a practical matter, impair or impede its ability to protect that interest; and (4) the applicant's interest is not adequately represented by the existing parties. Fed. R. Civ. P. 24(a)(2).

Rule 24(a)(2) "does not require a specific legal or equitable interest." *Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173, 1179 (9th Cir. 2011) (*en banc*). Rather, "[i]t is generally enough that the interest is protectable under some law, and that there is a relationship between the legally protected interest and the claims at issue." *Id.* Moreover, an applicant's interest in litigation is sufficient for purposes of FRCP 24 so long as "it will suffer a practical impairment of its interests as a result of the pending litigation." *Id.* The court accepts as true the nonconclusory allegations and evidence submitted in support of a motion to intervene. *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 820 (9th Cir. 2001). Further, an organization may intervene on behalf of its members.[2] *Id.* at 822 n.3.

---

[2] An organization may intervene on behalf of its members so long as it shows "(1) members have a legally protectable interest sufficient for intervention; (2) the defense of the [decision] is germane to the associations' purposes; and (3) individual [members] are not necessary participants in the suit." *Berg*, 268 F.3d at 822 n.3. Proposed Intervenors AFRC and AOCC have made these showings here.

[PROPOSED] DEFENDANT-INTERVENORS' MOTION TO INTERVENE AND
MEMORANDUM IN SUPPORT - 9

In 2011, the Ninth Circuit, sitting *en banc*, abandoned its prior court-engrafted constraints on intervention and acknowledged that a motion for intervention should be evaluated based solely on FRCP 24 intervention factors. *Wilderness Soc'y*, 630 F.3d at 1177, 1179-81. The unanimous *en banc* panel confirmed that an asserted interest need only relate to the "property or transaction that is the subject of the action" and that it was improper to "focus[] on the underlying legal claim instead of the property or transaction that is the subject of the lawsuit" in evaluating a motion for intervention. *Id.* at 1178 (quoting FRCP 24(a)). The Ninth Circuit thus reaffirmed that FRCP 24 is constructed "broadly in favor of proposed intervenors." *Id.* at 1179.

Under FRCP 24(b), a court has discretion to grant permissive intervention to anyone who, upon making a timely motion, has a claim or defense that shares a common question of law or fact with the main action. In exercising its discretion, the court must consider whether intervention will unduly delay or prejudice the adjudication of the original parties' rights. *Id*. Compared with intervention as of right, a district court has broad discretion in determining whether to grant a motion for permissive intervention under FRCP 24(b). *See generally Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1084, 1108-11 (9th Cir. 2002), *abrogated in part on other grounds by Wilderness Soc'y*, 630 F.3d at 1173. Thus, unlike intervention as of right, permissive intervention does not require a protectable interest or inadequacy of representation, and "plainly dispenses with any requirement that the intervenor shall have direct personal or pecuniary interest in the subject of the litigation." *Id*. at 1108 (internal quotation marks omitted).

### B. Proposed Intervenors Have a Right to Intervene.

#### 1. The motion is timely.

Proposed Intervenors meet the standards for intervention of right. First, the motion is timely. In determining whether a motion is timely, three factors are weighed: (1) the stage of the

proceeding; (2) any prejudice to the other parties; and (3) the reason for and length of any delay. *Orange Cty. v. Air California*, 799 F.2d 535, 537 (9th Cir. 1986). Plaintiffs filed their complaint two months ago, on December 9, 2025. ECF No. 1. Federal Defendants filed their answer on February 13, 2026. Thus, the case is still in its earliest stages.

Intervention at this stage of the case would not prejudice the existing parties because no party has engaged in any substantive proceedings at this time. Courts have held that intervening before merits briefing or a ruling on the merits is timely. *See, e.g.*, *Nw. Forest Res. Council v. Glickman*, 82 F.3d 825, 837 (9th Cir. 1996) (holding that the motion for intervention was timely when it was filed shortly after the complaint); *Idaho Farm Bureau Fed'n v. Babbitt*, F.3d 1392, 1397 (9th Cir. 1995) (holding a motion to intervene was timely when filed "before any hearings or rulings on substantive matters"); *WildEarth Guardians v. Hoover*, No. 1:16-CV-65-M-DWM, 2016 WL 7388316, at *1 (D. Mont. Dec. 20, 2016) (finding that the parties would not be prejudiced by intervention because the proposed intervenor was able to follow briefing schedule already in place). In this matter, Proposed Intervenors quickly mobilized to file this motion after learning that a preliminary injunction was imminent. Thus, Proposed Intervenors' motion here is timely.

    **2. Proposed Intervenors have interests that are related to the subject of the action.**

Second, Proposed Intervenors have interests that are related to the property or transaction that is subject to the action, which are interests that are "significantly protectable." *Donaldson v. United States*, 400 U.S. 517, 531 (1971). The significantly protectable interest requirement is a "practical, threshold inquiry" used to "dispos[e] of lawsuits by involving as many apparently concerned parties as is compatible with efficiency and due process." *United States v. City of Los Angeles*, 288 F.3d 391, 398 (9th Cir. 2002) (internal quotation marks and citations omitted). There is no "clear-cut [test] or bright-line rule" for determining whether a movant has such an

interest. *Id*. That said, a movant must establish that their interest "is protectable under some law" and "there is a relationship between the legally protected interests and the claims at issue." *Wilderness Soc'y*, 630 F.3d at 1180 (internal quotation marks omitted).

Plaintiffs seek a permanent (and preliminary) injunction and requests vacatur of the Last Chance Project, which would result in the cancellation of the timber sales authorized under the Last Chance Project. ECF No. 1 at 27. Both AFRC and AOCC have economic interests in the Last Chance Project, and associate timber sales, because the timber sales generate much-needed timber sale receipts for O&C counties, which help fund critical services. *See* Geissler Decl. ¶¶ 11—22; Freeman Decl. ¶¶ 7—15. AFRC members Boise Cascade and Murphy Company have purchased two timber sales authorized under the Last Chance Project, and this lawsuit threatens to harm their investment in those sales. Geissler Decl. ¶ 20. AFRC members and AOCC member counties also have an interest in a reliable supply of timber available for local sawmills and downstream production of forest products, as well as the much needed high-wage jobs these industries support in rural areas. Geissler Decl. ¶¶ 21—22; Freeman Decl. ¶¶ 12—15. The lack of reliable timber supply has been cited time and again as a leading reason for seven mill closures in Oregon in 2024. Freeman Decl. ¶ 15. Many of these mill closures have come from AFRC's members, and at least two of these mills were in sufficient proximity to the Last Chance Project and could have purchased timber harvested from the project. AFRC and AOCC have a direct interest in ensuring that more mills do not close their doors in the near future, and the sustainable harvest of federal timber—such as that under the Last Chance Project—is crucial to keeping mills operational. These significant harms are imminent given Plaintiffs' motion for preliminary injunction (ECF 16), which requests that ground disturbing activities in the Last Chance Project area be enjoined.

[PROPOSED] DEFENDANT-INTERVENORS' MOTION TO INTERVENE AND
MEMORANDUM IN SUPPORT - 12

Moreover, AOCC's members have a direct financial interest in the timber receipts generated from the Last Chance Project. Since timber receipts declined precipitously in the 1990s, AOCC's members have often elected to receive SRS funds in lieu of shared timber receipts. Freeman Decl. ¶ 8. However, SRS funds have repeatedly decreased and have been subject to inconsistent and delayed reauthorization. *Id*. Thus, AOCC's member counties may (indeed, are expected to) become wholly reliant on shared receipts from timber harvests on O&C lands to fund schools and essential county services, especially considering that the share of timber receipts owed to the O&C counties has been increased to 75 percent. *Id*. ¶¶ 8—9. Consequently, every timber harvest on O&C lands will have a direct impact on the amount of receipts available for AOCC's members. *Id*. ¶¶ 10, 13. If any timber sales are enjoined or vacated, AOCC's members will receive a depleted share of timber receipts. *Id*.

Timber companies and loggers "have direct and substantial interests in a lawsuit aimed at halting logging or, at a minimum, reducing the efficiency of their method of timber-cutting." *Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 972 (3rd Cir. 1998) (reversing denial of motion to intervene by timber companies and groups in environmental litigation). Therefore, companies that use public timber have "a broader interest in any litigation that might impede [their] ability to obtain timber from federal lands in the future." *Ctr. For Biological Diversity v. Gould*, Case No. 1:15-cv-01329-WBS-GSA, 2015 WL 6951295, at *2 (E.D. Cal. Nov. 10, 2015); *cf. N. Cascades Conservation Council v. U.S. Forest Serv.*, No. 2:20-CV-01321-RAJ-BAT, 2021 WL 871421, at *3 (W.D. Wash. Mar. 9, 2021).

AOCC and AFRC have the type of direct and substantial interests in this lawsuit that warrant intervention as of right. The Last Chance Project is directly tied to the economic wellbeing of AOCC and AFRC's members, who will or have purchased timber to be harvested

[PROPOSED] DEFENDANT-INTERVENORS' MOTION TO INTERVENE AND
MEMORANDUM IN SUPPORT - 13

under this project, or who will receive shared timber receipts generated by this project. Accordingly, Proposed Intervenors have protectable interests that support intervention as of right in this case. *See Wilderness Soc'y*, 630 F.3d at 1180.

### 3. Proposed Intervenors would be substantially affected by the disposition of this action.

"If an absentee would be substantially affected in a practical sense by the determination made in an action, [they] should, as a general rule, be entitled to intervene." *Berg*, 268 F.3d at 822. The third factor of FRCP 24(a)(2) often follows as a matter of course if the second factor is met. *See, e.g.*, *California ex rel. Lockyer v. United States*, 450 F.3d 436, 442 (9th Cir. 2006) ("Having found that appellants have a significant protectable interest, we have little difficulty concluding that the disposition of this case may, as a practical matter, affect it."); *Native Ecosystems Council v. Marten*, No. CV 17-153-M-DWM, 2018 WL 2364293, at *2 ("On a broader scale, if Plaintiffs are successful in challenging the Farm Bill categorical exclusion, it will also affect future contracts and employment for members of the logging associations.").

Here, Plaintiffs' requested relief would have legal and practical effects on the interests of Proposed Intervenors. Plaintiffs' requested remedy would impair AFRC's and AOCC's interests in an economically feasible and accessible timber supply now and in the future. Geissler Decl. ¶¶ 20—22; Freeman Decl. ¶¶ 13—16. This would endanger the livelihood of AFRC's members, and the economic and socioeconomic health of timber-dependent AOCC counties. Geissler Decl. ¶¶ 20—22; Freeman Decl. ¶¶ 13—16. Plaintiffs' requested relief would, quite literally, take money out of the budgets of AOCC's member counties, and deprive AFRC's members of a reliable source of timber. Geissler Decl. ¶¶ 17—22; Freeman Decl. ¶¶ 10—16. AFRC and AOCC stand to be substantially affected by the disposition of this action.

### 4. Proposed Intervenors are not adequately represented by the existing parties.

Finally, Proposed Intervenors would not be adequately represented by government counsel in this case. An "applicant-intervenor's burden in showing inadequate representation is minimal: it is sufficient to show that representation may be inadequate." *Forest Conservation Council v. U.S. Forest Serv.*, 66 F.3d 1489, 1498 (9th Cir. 1995), *abrogated in part on other grounds by Wilderness Soc'y*, 630 F.3d 1173 (2011). This prong is satisfied where a movant's interests are "potentially more narrow than the public's at large" and where government representation of those interests "'*may have been* inadequate.'" *Allied Concrete & Supply Co. v. Baker*, 904 F.3d 1053, 1068 (9th Cir. 2018) (quoting *Californians for Safe & Competitive Dump Truck Transp. v. Mendonca*, 152 F.3d 1184, 1190 (9th Cir. 1998)). *Allied* reversed a district court's denial of intervention; *Mendonca* affirmed a grant of intervention to a similar group, holding this factor was satisfied because the movant's interests were "potentially more narrow and parochial than the interests of the public at large." *Mendonca*, 152 F.3d at 1190.

A proposed intervenor is adequately represented only if "(1) the interests of the existing parties are such that they would undoubtedly make all the non-party's arguments; (2) the existing parties are capable of and willing to make such arguments; and (3) the non-party would offer no necessary element to the proceeding that existing parties would neglect." *Southwest Ctr. for Biological Diversity v. Babbitt*, 150 F.3d 1152, 1153-54 (9th Cir. 1998). The most important factor in assessing the adequacy of representation is "how the interest compares with the interests of the existing parties." *Citizens of Balanced Use v. Montana Wilderness Ass'n*, 647 F.3d 893, 898 (9th Cir. 2011).

Proposed Intervenors' interests are narrower in scope than that of the BLM. Geissler Decl. ¶ 23; Freeman Decl. ¶ 17. While the agency has an interest in satisfying the demands of the

2016 RMP, AFRC members and AOCC counties have direct economic interests at stake that the BLM does not share. Geissler Decl. ¶ 23; Freeman Decl. ¶ 17. Moreover, whereas the BLM is attempting to satisfy the ASQ outlined in the 2016 RMP, AOCC and AFRC have both initiated litigation against the BLM arguing that the 2016 RMP violates the O&C Act by failing to implement sustained yield timber harvest on all O&C Act lands. Geissler Decl. ¶ 25; Freeman Decl. ¶ 17. Thus, the BLM has broader public interests that are not a direct reflection of Proposed Intervenors'. *See Forest Conservation Council*, 66 F.3d at 1499 (holding that a federal agency "is required to represent a broader view than the more narrow, parochial interest of [proposed intervenors] the state of Arizona and Apache County."); *Mont. Elders for a Livable Tomorrow v. U.S. Office of Surface Mining*, No. CV 15-106-M-DWM, 2015 WL 12748263 at *1 (D. Mont. Dec. 11, 2015) (finding this factor satisfied where movant had "a personal interest that does not belong to the general public and because Plaintiffs and Defendants are representing the public interest"); *Native Ecosystem Council*, No. CV 17-153-M-DWM, 2018 WL 2364293, at *2 (noting that while both the Forest Service and Proposed Defendant–Intervenors seek to defend the regulatory process that was followed in this case, their ultimate goals are different).

As recognized in *Berg*, a federal agency cannot be expected to protect the community-level and economic interests of Proposed Intervenors. *Berg*, 268 F.3d at 823 (holding that the interests of private associations were not adequately represented by federal and municipal defendants in an ESA challenge to the City of San Diego's comprehensive land management plan); *see generally Capitol Indem. Corp. v. Reflections Acad., Inc.*, No. CV 21-57-DLC, 2021 WL 5329936, at *1 (D. Mont. Nov. 16, 2021) (finding that "any burden resulting from delay is outweighed by the interest in resolving this case on a complete factual record"). Thus, inadequate representation exists here where the broader interests of the BLM do not align with Proposed

[PROPOSED] DEFENDANT-INTERVENORS' MOTION TO INTERVENE AND
MEMORANDUM IN SUPPORT - 16

Intervenors' economic, social, and ecological (forest health) interests. *See* Geissler ¶ 24 (examples of cases where AFRC successfully intervened in challenges to agency actions); Freeman Decl. ¶ 17 (explaining how the BLM has historically not represented AOCC's interests).

The inadequacy of the BLM's representation is further evidenced by the history of this case. The Last Chance Project was first approved in September of 2024. ECF No. 1 ¶ 71. The same plaintiffs as in this case filed a lawsuit following that approval. ECF No. 1 ¶ 72. In response to that challenge the BLM voluntarily remanded the Last Chance Project. *Id*. Proposed Intervenors seek to move the Last Chance Project forward in this litigation, so that the goals of the RMP and the O&C Act may be furthered by the commercial use of O&C lands. Accordingly, Proposed Intervenors have met the minimal showing required to demonstrate that the existing parties do not adequately represent their interests.

For the abovementioned reasons, Proposed Intervenors met the requirements for intervention as of right under FRCP 24(a) to defend the Last Chance Project.

### C. Alternatively, the Court May Grant Permissive Intervention.

Given their clear interests in this case, Proposed Intervenors believe they meet the standard for intervention as of right under FRCP 24(a) and that permissive intervention is unnecessary here. Nevertheless, out of an abundance of caution, Proposed Intervenors alternatively move for permissive intervention under FRCP 24(b).

District courts have broad discretion to grant permissive intervention. Fed. R. Civ. P. 24(b). So long as an applicant's motion is timely and its "claim or defense and the main action have a question of law or fact in common," a court may grant permissive intervention. As timeliness is established, the sole issue for the court to consider is whether the proposed

intervenor "asserts a claim or defense in common with the main action." *Kootenai Tribe*, 313 F.3d at 1110. In *Kootenai*, environmental groups were allowed to intervene under Rule 24(b) where they asserted "defenses of the Roadless Rule directly responsive to the claim for injunction," along with "an interest in the use and enjoyment of roadless lands, and in the conservation of roadless lands, in the national forest lands subject to the Roadless Rule . . . ." *Id*. at 1110-11. Similarly, the Ninth Circuit recently found that AFRC and other resource industry associations were improperly denied permissive intervention to defend a Fish and Wildlife Service rule delisting the gray wolf given their unique interests and expertise on the issue. *See Defenders of Wildlife v. U.S. Fish & Wildlife Serv.*, 2022 WL 3656444 (9th Cir. Aug. 24, 2022) (finding the district court failed to consider their unique interest and expertise, and that the current parties would not undoubtedly make all the same arguments as proposed intervenors).

      Proposed Intervenors seek to participate to defend the commercial harvest authorized by the Last Chance Project. Proposed Intervenors assert defenses against the main action, which share common questions of law and fact. This Court would benefit from hearing from Proposed Intervenors about the legal issues and repercussions of a permanent injunction and partial vacatur because their members and counties will be the ones who will suffer the most from the loss of the timber sales. Proposed Intervenors have an interest in the BLM's ability to conduct treatments in the HLB, LSR, and RR, in accordance with the 2016 RMP, in a timely and economic manner.

      This Court should grant permissive intervention even if it denies intervention as of right.

## IV. CONCLUSION.

      For the forgoing reasons, the American Forest Resource Council and Association of O&C Counties respectfully request that the Court grant their motion to intervene.

Dated this 17th day of February, 2026.

/s/ Dominic M. Carollo
DOMINIC M. CAROLLO, OSB #093057
NOLAN G. SMITH, OSB #215034
AUDREY F. BOYER, OSB#106560
Carollo Law Group
Mail:   P.O. Box 2456
Roseburg, OR 97470
Office: 2315 Old Highway 99 South
Roseburg, OR 97471
Telephone: (541) 957-5900
Fax: (541) 957-5923
Email: dcarollo@carollolegal.com

SARA GHAFOURI, OSB #111021
American Forest Resource Council
700 N.E. Multnomah, Suite 320
Portland, Oregon 97232
Telephone: (503) 222-9505
Fax: (503) 222-3255
Email: sghafouri@amforest.org
*Attorneys for Proposed Defendant-Intervenors*

[PROPOSED] DEFENDANT-INTERVENORS' MOTION TO INTERVENE AND
MEMORANDUM IN SUPPORT - 19

## CERTIFICATE OF SERVICE

I, Dominic Carollo, hereby certify that on February 17, 2026, I caused the foregoing to be served upon counsel of record through the Court's electronic service system.

Dated this 17th day of February, 2026.

/s/ Dominic M. Carollo