DOMINIC M. CAROLLO, OSB #093057
NOLAN G. SMITH, OSB #215034
AUDREY F. BOYER, OSB #106560
Carollo Law Group
Mail:   P.O. Box 2456
        Roseburg, OR 97470
Office: 2315 Old Highway 99 South
        Roseburg, OR 97471
Telephone: (541) 957-5900
Fax: (541) 957-5923
Email: dcarollo@carollolegal.com
Email: nsmith@carollolegal.com
Email: aboyer@carollolegal.com

SARA GHAFOURI, OSB #111021
American Forest Resource Council
700 N.E. Multnomah, Suite 320
Portland, Oregon 97232
Telephone: (503) 222-9505
Fax: (503) 222-3255
Email: sghafouri@amforest.org
*Attorneys for Proposed Defendant-Intervenors*

# UNITED STATES DISTRICT COURT
## DISTRICT OF OREGON
### MEDFORD DIVISION

| | |
|---|---|
| **KLAMATH-SISKIYOU WILDLANDS CENTER, OREGON WILD, and CASCADIA WILDLANDS,**<br><br>Plaintiffs,<br><br>vs.<br><br>**DOUGLAS JAMES BURGUM in his official capacity as Secretary of the Interior, U.S. FISH & WILDLIFE SERVICE, and U.S. BUREAU OF LAND MANAGEMENT,**<br><br>Defendants,<br><br>**MURPHY COMPANY,**<br><br>Proposed Defendant-Intervenor,<br><br>and | Civil Case No. 1:25-cv-02296-CL<br><br>**DECLARATION OF ANDY GEISSLER**<br><br>THE HONORABLE MARK D. CLARKE |

**AMERICAN FOREST RESOURCE COUNCIL,** an Oregon non-profit corporation, and **ASSOCIATION OF O&C COUNTIES,** an unincorporated Association,

　　　　Proposed Defendant-Intervenors.

I, Andy Geissler, under threat of penalty of law and pursuant to 28 U.S.C. § 1746, do hereby declare as follows:

1.　　I am the Director of Forest Policy and Monitoring for the American Forest Resource Council (AFRC). I make this declaration based on my personal knowledge. I am over the age of 18 and, if called as a witness, would competently testify as follows.

2.　　I have worked for AFRC for fourteen years. Before joining AFRC, I was a forester with the Washington Department of Natural Resources for six years, after one year working for the Missouri Department of Conservation. I have a Bachelor of Science degree in forestry from Virginia Polytechnic Institute and State University. In my capacity as AFRC's Director of Forest Policy and Monitoring, I monitor the U.S. Forest Service's (Forest Service) federal timber program in Oregon, Washington, California, Idaho, and Montana, as well as the Bureau of Land Management's (BLM) timber program in western Oregon.

**AFRC and Its Members**

3.　　AFRC is a regional trade association whose purpose is to advocate for sustained-yield timber harvests on public timberlands throughout the West to enhance forest health and resistance to fire, insects, and disease. We do this by promoting active management to attain productive public forests, protect adjoining private forests, and assure community stability. AFRC supports sustainable and environmentally responsible management of public lands,

sharing the goal of other stakeholders for sustainable forest management and healthy forests that support various species. AFRC also works to improve federal and state laws, regulations, policies, and decisions regarding access to and management of public forest lands and protection of all forest lands.

4.     In my capacity as AFRC's Director of Forest Policy and Monitoring, I regularly meet with federal land managers from the National Forests and BLM Districts from which our members buy timber and disseminate information about those meetings to our members. AFRC staff facilitates biannual purchaser meetings during the course of the year with our members and each National Forest and BLM District to discuss the status of their timber program and viability of timber sales. AFRC also publishes a monthly newsletter that includes updates on National Forest projects. Copies of our newsletters are available on AFRC's website www.amforest.org/newsletter.

5.     I am also responsible for tracking the federal timber programs of the Forest Service and BLM and oversee AFRC's comments on projects from the scoping stage until a project's decision notice is issued and/or the timber sale is sold. I provide substantive feedback to these federal agencies on their timber programs with a focus on improving the economic feasibility of their timber sales and helping to ensure a project's purpose and need is achieved throughout the landscape. I have also developed a comprehensive and meticulous understanding of the agencies' forest plans and resource management plans, and ensure they develop vegetation management projects that adhere to the management directions contained within them.

6.     AFRC represents over 50 forest product businesses and forest landowners throughout the West in Oregon, Washington, California, Idaho, Nevada, and Montana. Because many of AFRC's members do not own private timberland, they depend heavily on federal lands

to source raw materials for their milling operations. Our members are frequent purchasers of timber sales offered by the BLM. The management of federal lands ultimately dictates not only the viability of their businesses, but also the economic health of the communities in which they operate. Oregon's forest sector employs more than 62,000 Oregonians, and AFRC's membership directly and indirectly constitutes a large percentage of those jobs. Rural communities, such as the ones supported by the companies mentioned above and outlined below, are particularly sensitive to the health of the forest product sector. The forest sector in Oregon represents about three percent of the state's total jobs. However, in many rural counties that percentage is over 10 percent of all jobs. Rural communities are particularly sensitive to the forest product sector because more than 50 percent of all manufacturing jobs are in wood manufacturing.

7. The Last Chance Project will generate approximately 80 MMbf over the next three years. Many of our members have operations in communities within and adjacent to the Medford District, including: Boise Cascade, Swanson Group, Murphy Company, and Mineral Creek Logging. Because many of AFRC's members do not own private timberland, they depend heavily on federal lands to source raw materials for their milling operations. The management of federal lands ultimately dictates not only the viability of their businesses, but also the economic health of the communities in which they operate.

8. Swanson Group is a consolidation of multiple family-owned businesses that have been independently supporting Oregon communities since 1951, and collectively as Swanson Group since 2001. Swanson Group is a major private employer in the communities in which its manufacturing facilities operate and takes pride in providing many family-wage jobs to those rural communities. Currently, Swanson Group employs 801 employees spread throughout its

Glendale (plywood), Roseburg (stud mill), and Springfield (plywood) facilities. On average, Swanson Group hires 20 contract loggers, each of whom work with a crew size of about 10 people. Swanson Group would like to increase its production to boost profitability, but the company is heavily dependent on public lands to supply raw materials to its facilities and is constrained by a shortage of sustainable timber. The extensive loss of privately managed forest land during the 2020 Labor Day fires increases the importance of public timber supply to support existing infrastructure. Since 2021, Swanson Group purchased 4.9 MMbf of BLM timber sales from the Medford District.

9. Boise Cascade is headquartered in Boise, Idaho, and since its founding in 1957, has grown to become a leading manufacturer and distributor of building materials in North America, with mills located in Idaho, Oregon, Washington, Louisiana, Alabama, North Carolina, South Carolina, and Canada. Boise Cascade owns and operates four mills in Western Oregon, employing just over 700 workers with family-wage jobs that provide health care and other benefits. Boise Cascade's White City and Medford mills are located near the center of the Medford District and heavily rely on BLM timber sales for their production and capacity needs. Since 2021, Boise Cascade purchased 57.6 MMbf from the Medford District.

10. Mineral Creek Logging and Hauling (Mineral Creek) was founded in 2010 by Dustin De Atley. Prior to Mineral Creek, Dustin was an owner/operator log hauler, beginning in 2000. Today, Mineral Creek employs 32 full-time employees with family-wages and invests heavily into the surrounding rural communities through youth sponsorships and local-sourcing of their parts and fuel. As a full-operation logging company, Mineral Creek purchases and executes timber sale contracts from start to finish, including road building and maintenance, logging, hauling, and forest residual cleanup. Mineral Creek prides itself on being great stewards of the

forest and considers its operations as integral to maintaining and improving forest health and resiliency—particularly because they can use low impact machinery to process smaller trees and material that would otherwise be left on the forest floor to contribute to future hazardous fuels loading. Mineral Creek needs approximately 30 MMbf per year to remain operational. Mineral Creek would like to increase its production and operations, but the company is constrained by a shortage of timber supply. Mineral Creek could harvest and process 35 MMbf annually at fully operational levels. Mineral Creek is heavily dependent on public lands to supply sustainable timber to its facilities. On average, 80 percent of its annual timber consumption comes from federal timberlands. The remaining volume comes from private and Oregon Department of Forestry lands. Since 2021, Mineral Creek purchased 24 MMbf from the Medford District.

**Last Chance Project**

11. The Last Chance Project includes commercial and non-commercial forest management activities on approximately 11,686 acres of BLM lands in Douglas, Jackson, and Josephine counties. This includes 8,240 acres of commercial treatments and 3,446 acres of non-commercial hazardous fuels reduction treatments. Commercial treatments would occur in the Harvest Land Base (HLB) Low Intensity Timber Area (LITA), Moderate Intensity Timber Area (MITA), and Uneven-aged Timber Area (UTA) Land Use Allocations (LUAs), as well as the Late Successional Reserve-Dry (LSR-Dry), Riparian Reserve-Moist (RR-Moist) and Riparian Reserve-Dry (RR-Dry) LUAs under the 2016 Southwestern Oregon Record of Decision and Resource Management Plan (ROD/RMP).

12. Within the HLB LUAs the Last Chance Project is intended to comply with the ROD/RMP's management objectives and achieve continual timber production that can be sustained through a balance of growth and harvest, contributing to the Medford's Allowable Sale

Quantity (ASQ) of 37 MMbf over the next three years. The 2016 RMPs placed 80% of BLM-managed land in western Oregon into Reserves where sustained-yield timber management is prohibited. The remaining 20% designated as HLB is the only LUA where sustained-yield timber production is permitted and which may contribute to the ASQ. This disproportionate allocation of land in western Oregon makes effective management of the meager amount of HLB LUA critical.

13.     Within the LSR-Dry LUA the Last Chance Project is intended to carry out the ROD/RMP's management directive of implementing commercial treatments on at least 17,000 acres per decade for the Medford District. Through 2024, the BLM has attained only 18 percent (3,063 acres) of that target for the period starting in 2017 and ending in 2026. This Direction that included firm acreage requirements for commercial thinning and commercial selection harvest was likely included in the SWO RMP to acknowledge the critical need for density reduction in LSRs to mitigate the risk of wildfire, insect and disease. Within the RR-Dry and RR-Moist LUAs the Last Chance Project is intended to improve structural complexity, reduce the risk of stand replacing fires, and ensure wood contribution to streams.

14.     Implementation of commercial treatments is vitally important for the long-term viability of our membership. The vegetation modeling that calculated the ASQ for the Medford District assumed a certain level of commercial treatment. The same modeling and analysis also concluded that commercial treatments in the LSR-Dry LUA were critical to reduce forest density to mitigate the risk of wildfire, but the BLM has continually failed to satisfy the ROD/RMP's target in this LUA. If treatments in any LUA were deferred the result would be substantially less timber volume and revenue for BLM, AFRC's members, and a continued failure to implement the planning directives of the ROD/RMP. Treatment deferral would also further hamper the

Medford District's ability to catch up on their Dry LSR commercial treatment acreage requirements to reduce the risk of wildfire. This increased wildfire risk in the LSR would also pose threats to adjacent HLB LUAs in a manner that could disrupt ASQ attainment.

15. The BLM has offered two timber sales under the Last Chance Project. The Take a Chance sale included 10.6 MMbf and was sold to Boise Cascade on September 26, 2024. The Paul's Payoff sale included 5.7 MMbf and was sold to Murphy Company on September 25, 2025. Both sales include treatment acres in HLB, Dry LSR, and Riparian Reserve LUAs.

**AFRC Has Significant Protectable Interests**

16. Because AFRC advocates for sustained-yield harvest on BLM-administered lands, we strongly support the Last Chance Project, including the prescriptions on the HLB, LSR, and RR LUAs. AFRC has been consistently and thoroughly involved in the planning, environmental analysis, and decision-making process for the Last Chance Project, playing a constructive role in this process. On January 29, 2021, AFRC submitted comments in response to the BLM's Last Chance Project scoping notice. Attached as **Exhibit A** is a true and accurate copy of our January 29, 2021, scoping letter. On August 8, 2024, AFRC submitted comments on the Last Chance Forest Management Project EA. Attached as **Exhibit B** is a true and accurate copy of our August 8, 2024, comment letter. After the BLM voluntarily remanded the Last Chance Project for further analysis, AFRC submitted comments on March 28, 2025, on the BLM's Revised EA for the Last Chance Forest Management Project. In that letter AFRC advocated for BLM to adopt Alternative 2 as analyzed and described in the EA. BLM ultimately adopted a modified version of Alternative 2. Attached as **Exhibit C** is a true and accurate copy of our March 28, 2025, comment letter.

17. AFRC has significant interest in the Last Chance Project, for several reasons. First, AFRC members Boise Cascade and Murphy Company are the purchasers of the Last Chance and Paul's Payoff timber sales, which will implement a portion of the Last Chance Project. These sales are important to their operations because the expected volume has been included in their total volume portfolio necessary to run their facilities over the next several years. Without this volume, Boise and Murphy Company would either be forced to curtail portions of its milling operations or to procure volume from other outlets which could increase costs to their operations.

18. Second, AFRC has an interest in the timber supply from federal timberlands. Any commercial timber from federal land in the Medford District will support the timber supply to AFRC's members. Currently, only 16.3 mmbf of the 80 MMbf associated with the Last Chance Project has been offered by BLM. Any additional timber sales implementing the Last Chance Project will likely be purchased by an AFRC member or processed at an AFRC member mill. Since 2021, the AFRC members described above have purchased a total of 86.5 MMbf from the Medford District. It is reasonable to assume that those AFRC members, and possibly others, will continue to purchase future timber volume from the BLM-administered lands within the Last Chance Project area at a comparable proportion to what has been purchased since 2021.

19. Third, AFRC and our members have a strong interest in maintaining the economic vitality of rural Oregon counties and the availability of family-wage jobs that the forest products industry provides. As stated above, the forest sector in Oregon represents about 3% of the state's total jobs. For every one million board feet of timber harvested on BLM lands in Western Oregon, 13 local non-federal jobs are created or maintained, and an estimated $647,000 of non-federal employment income is introduced into local economies (Table 3-181, PRMP/EIS, pg.

Page **9** of **13 -- DECLARATION OF ANDY GEISSLER**

678). And the total economic contribution from BLM timber harvest is greater than employment income alone. In 2025, the BLM in Western Oregon also harvested 250.2 MMbf valued at just over $65 million. Of that $65 million, half can be expected to be shared with the 18 O&C Counties to assist in delivering essential public services.

20. If the Last Chance Project were enjoined or vacated, it would have a detrimental impact on AFRC's members. AFRC members Boise Cascade and Murphy Company would not be able to implement the Take a Chance and Paul's Payoff sales. Moreover, AFRC members would not be able to purchase or operate future timber sales associated with the Project. As stated above, AFRC members depend on public lands to source raw materials for their mills, and the Last Chance Project will generate about 80 MMbf, consistent with the ROD/RMP which sets out annual and decadal ASQs for the Medford District. In addition, the Last Chance Project is located nearly entirely on O&C lands. AFRC members in southern Oregon depend on O&C lands for their future viability and continued timber supply because these O&C lands are designated for permanent sustained-yield timber production under the O&C Act.

21. AFRC members also depend on a healthy forest ecosystem (which includes a cycle of growth and harvest) to provide the timber products they need to supply their facilities. For that reason, AFRC members consider themselves partners with the BLM, helping the agency to achieve the shared goal of improving forest health and providing a sustainable supply of timber products to support the local industry and local communities. Degraded forest health and reduced vigor of these forests will hamper our members' ability to acquire this timber supply in the future. Lastly, AFRC members depend on federal forest lands that are resilient to high intensity wildfire. This resiliency is important to protect BLM land and also neighboring private lands.

22.     Granting the requested relief would adversely affect AFRC's members, their employees, and the communities that they support. It would also adversely affect potential independent contractors that AFRC's members contract with to perform other tasks that are authorized by the Last Chance Project.

**Federal Defendants Do Not Adequately Represent AFRC**

23.     Though AFRC and the federal defendants share the same ultimate goal of defending the Last Chance Project, including the future timber sales authorized under the Last Chance Project, the BLM does not adequately represent AFRC or its members in this litigation. AFRC's interests are narrower than the BLM's interests because we are narrower in scope geographically and have direct economic interests that the agency does not share.

24.     Because the government does not always adequately represent our members' interests, AFRC or our members have intervened in various challenges to agency action. For example, AFRC and the Association of O&C Counties has successfully intervened in a case challenging BLM's Integrated Vegetation Management programmatic decision authorizing commercial treatments in Oregon. *See Klamath-Siskiyou Wildlands Center et al. v. U.S. Bureau of Land Management*, Case No. 1:23-cv-00519-CL, *Order Granting Intervention*, EFC No. 15 (D. Or. Aug. 7, 2023). AFRC and the Association of O&C Counties also successfully intervened in a case challenging the BLM's Blue and Gold Harvest Plan which authorized commercial HLB treatments in BLM's Roseburg District. *See Cascadia Wildlands et al. v. U.S. Bureau of Land Management*, Case No. 6:24-cv-01641-MK, *Order Granting Intervention*, ECF No. 16 (D. Or. Dec. 11, 2024). AFRC successfully intervened in the challenge to BLM's N126 Project, a programmatic decision involving treatment in Late-Successional Reserves. *See Cascadia Wildlands v. Adcock et al.*, Case No. 6:22-cv-00767-AA, *Order Granting Intervention*, ECF No.

Page 11 of 13 -- DECLARATION OF ANDY GEISSLER

38 (D. Or. March 15, 2024). AFRC and Douglas County, Oregon, successfully intervened in a case involving a challenge to the BLM's Final Rule eliminating its protest process, Forest Management Decision Protest Process and Timber Sale Administration, 85 Fed. Reg. 82,359 (Dec. 18, 2020). *See Cascadia Wildlands et al. v. Bureau of Land Management et al.*, Case No. 6:21-cv-01487-MC, *Order Granting Intervention*, ECF No. 25 (D. Or. Apr. 21, 2022). AFRC member Sierra Pacific Industries, formerly doing business as Seneca Sawmill Company, successfully intervened in a challenge to the BLM's Thurston Hills Non-Motorized Trails and Forest Management Project. *See Cascadia Wildlands et al. v. Bureau of Land Management*, No. 6:19-cv-00247-MC, *Order Granting Intervention*, ECF No. 15 (D. Or. May 6, 2019); *see also Cascadia Wildlands et al. v. Bureau of Land Management*, No. 6:20-cv-01395-MK, *Order Granting Intervention*, ECF No. 6 (D. Or. Sept. 3, 2020).

25. Moreover, AFRC's and the BLM's interests have not always aligned. For example, AFRC challenged the BLM's 2016 RMPs for alleged violations of the O&C Act. *See Am. Forest Res. Council, et al. v. Hammond, et al.*, Case No. 16-cv-01599-RJL (D.D.C), *reversed*, 77 F.4th 787 (D.C. Cir. July 18, 2023). AFRC also challenged the BLM for repetitive failures to achieve its allowable sale quantity in violation of the O&C Act. *Swanson Group MFG, LLC et al. v. Bernhardt, et al.*, Case No. 15-cv-01419-RJL (D.D.C.), *reversed*, 77 F.4th 787 (D.C. Cir. July 18, 2023).

26. As noted earlier, proper interpretation of and subsequent action pursuant to the directives of the 2016 RMPs is vital to the health of western Oregon forests and the surrounding communities. The Last Chance Project best achieves the treatment objectives outlined by the BLM in the 2016 RMP. For these reasons, AFRC supports the Last Chance Project, and the associated timber sale approved under the Project.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 13th day of February, 2026 at Eugene, Oregon.

*Andy Geissler*
Andy Geissler

Case 1:25-cv-02296-CL    Document 24    Filed 02/17/26    Page 14 of 14