DOMINIC M. CAROLLO, OSB #093057
NOLAN G. SMITH, OSB #215034
AUDREY F. BOYER, OSB #106560
Carollo Law Group
Mail:   P.O. Box 2456
         Roseburg, OR 97470
Office: 2315 Old Highway 99 South
         Roseburg, OR 97471
Telephone: (541) 957-5900
Fax: (541) 957-5923
Email: dcarollo@carollolegal.com
Email: nsmith@carollolegal.com
Email: aboyer@carollolegal.com

SARA GHAFOURI, OSB #111021
American Forest Resource Council
700 N.E. Multnomah, Suite 320
Portland, Oregon 97232
Telephone: (503) 222-9505
Fax: (503) 222-3255
Email: sghafouri@amforest.org
*Attorneys for Proposed Defendant-Intervenors*

# UNITED STATES DISTRICT COURT
## DISTRICT OF OREGON
### MEDFORD DIVISION

| | |
|---|---|
| **KLAMATH-SISKIYOU WILDLANDS CENTER, OREGON WILD, and CASCADIA WILDLANDS,**<br><br>Plaintiffs,<br><br>vs.<br><br>**DOUGLAS JAMES BURGUM in his official capacity as Secretary of the Interior, U.S. FISH & WILDLIFE SERVICE, and U.S. BUREAU OF LAND MANAGEMENT,**<br><br>Defendants,<br><br>**MURPHY COMPANY**,<br><br>Proposed Defendant-Intervenor,<br><br>and | Civil Case No. 1:25-cv-02296-CL<br><br>**DECLARATION OF TIM FREEMAN**<br><br>THE HONORABLE MARK D. CLARKE |

DECLARATION OF TIM FREEMAN - 1

| | |
|---|---|
| **AMERICAN FOREST RESOURCE COUNCIL,** an Oregon non-profit corporation, and **ASSOCIATION OF O&C COUNTIES,** an unincorporated Association,<br><br>    Proposed Defendant-Intervenors. | |

I, Tim Freeman, under threat of penalty of law and pursuant to 28 U.S.C. § 1746, do hereby declare as follows:

1. I am the president of the Association of O&C Counties (AOCC). I also serve as a Commissioner of Douglas County, Oregon. I make this declaration based on my personal knowledge. I am over the age of 18, and if called as a witness, would competently testify as follows.

2. The "O&C Act" is the governing land management act for nearly all of the Bureau of Land Management's (BLM) western Oregon timberlands (O&C timberlands). The O&C Act requires that timber from BLM's O&C timberlands be harvested at an "annual sustained-yield capacity." 43 USC §118la; 43 USC § 2601. 75 percent of the shared timber receipts generated from the O&C timberlands are designated to the counties where the O&C timberlands are located (the O&C counties).

3. The O&C Act draws its history from the United States' land grant to the Oregon and California Railroad Company to subsidize the development of a railroad through Oregon. As construction progressed, the Railroad Company was to receive alternating sections of land on both sides of the right-of-way spanning 20, and in some cases 30 miles, on each side. The result was a checkerboard band of lands 40 to 60 miles wide the full length of the state that transferred from federal ownership into private ownership by the Railroad Company. The lands conveyed were eventually to be sold by the Railroad Company but were subject to the conditions that they

be resold only in 160-acre parcels to "actual settlers" for no more than $2.50 per acre. The railroad was built, but the lands were never resold to settlers. Congress responded with the Chamberlain-Ferris Act of June 9, 1916, which declared that all grant lands still held by the Railroad Company were "revested" to ownership by the United States, removing the lands from local tax rolls. Unfortunately, the initial compensation provided to Oregon counties was insufficient. Therefore, in 1937 Congress designated the O&C timberlands for sustained-yield timber production, with 50 percent of the revenues generated from the lands designated to the O&C counties. 43 USC §1181a; 43 USC § 2605.

4.     AOCC represents counties in western Oregon that host 2.1 million acres of O&C timberlands. AOCC was formed in 1925 as an advocate for the Oregon counties with strong local interest in how the O&C timberlands are managed. Advocacy by AOCC resulted in legislation in 1926 and again in 1937 with passage of the O&C Act that is still the governing law guiding management of the O&C timberlands today. AOCC has been active in all legislation and all administrative actions regarding the management of these lands for nearly 100 years—a testament to the importance of these lands to the health and wellbeing of western Oregon communities.

5.     Just recently, AOCC was instrumental in increasing the counties' share of timber receipts generated from O&C timberlands. When the O&C Act was passed, it allocated 50 percent of receipts to the counties with O&C timberlands, and provided that an additional 25 percent of receipts would be dispersed to counties once the U.S. Department of Treasury was reimbursed for the cost paid to the railroad when the lands were revested. However, despite the Treasury being fully reimbursed, the counties were never given their additional 25 percent allocation. In 1982, Congress made the additional 25 percent allocation a recurring charge

DECLARATION OF TIM FREEMAN - 3

against the O&C fund. In January of 2026, AOCC's successful advocacy led an effort to return the 25 percent allocation to the O&C counties. Now, 75 percent of the shared timber receipts generated from the O&C timberlands will be allocated to the O&C counties, as promised in the 1937 O&C Act.

6. AOCC is committed to the social and economic wellbeing of western-Oregon counties and communities, and the health and productivity of federal O&C timberlands. AOCC advocates for sustained yield management of the O&C timberlands, as required by federal law under the O&C Act, to protect and support jobs and local economies, essential public services, and healthy resilient timberlands.

7. For decades the O&C Act satisfied its goal of replacing lost county property tax revenue with a share of timber receipts. This changed quickly in 1990 when the Northern Spotted Owl (NSO) was listed as a threatened species under the Endangered Species Act. As a Douglas County Commissioner, and current AOCC president, I am intimately familiar with the plight of forest management on BLM's O&C timberlands since 1990. Following the NSO's listing, timber harvest on O&C timberlands plummeted by over 80 percent. This 80-plus percent decline in harvest resulted in severe budget shortfalls for AOCC's members. Counties which once thrived from the revenues brought by federal timberlands became a shadow of their former selves, a problem which persists to this day. Meanwhile, de facto moratoriums on forest management, in combination with decades of wildfire suppression, led to overstocked forests and timberlands. These overstocked and unmanaged forests and timberlands have become ticking time bombs, ready to explode into catastrophic wildfires which engulf whole communities. In the past decade millions of acres of Oregon federal lands, and ten-to-hundreds of thousands of acres of O&C timberlands, have burned. This includes the Archie Creek Fire, which burned nearly 40,000 acres

DECLARATION OF TIM FREEMAN - 4

of O&C timberlands in Douglas County. The overstocking of federal forests and timberlands has also caused catastrophic levels of tree mortality in southwestern Oregon. The BLM has developed multiple projects in Southern Oregon to address the unprecedented levels of tree mortality that are occurring on O&C timberlands, such as the Douglas Fir Mortality Complex project and the Strategic Operations for Safety project. Commercial harvest is the best way to reduce overstocking and improve forest health. Without commercial harvest, the rate and scope of tree mortality in southern Oregon is poised to increase, which greatly elevates the risk of catastrophic wildfires near at-risk communities.

8. The Secure Rural Schools Act (SRS) was intended to temporarily replace some of the revenues AOCC's member counties lost on account of timber harvest declines on O&C timberlands. SRS provides counties with an opportunity to receive *either* SRS funds in lieu of receipts generated from O&C timberlands, or counties can elect to receive their share of receipts from the O&C timberlands. For years, SRS funds have exceeded O&C receipts due to the depressed nature of timber harvests on the O&C timberlands. However, SRS funds pale in comparison to historic receipts from O&C timberlands and have declined over time. Repeated reauthorizations of the SRS resulted in lower and lower SRS payments to AOCC's member counties. Moreover, SRS reauthorizations have become increasingly difficult and unpredictable. It took significant effort to get SRS reauthorized in December of 2025, after it was not reauthorized in 2023. The reauthorization provided back payments for funding missed in 2024 and 2025, in accordance with counties' prior election.

9. While SRS has been reauthorized, the funding provided by SRS has dropped to such a degree that, now, electing to receive timber receipts will certainly be the better option for the O&C counties going forward into Fiscal Year 2026 and beyond, especially in light of the

DECLARATION OF TIM FREEMAN - 5

increase to a 75 percent allocation. History has proven that there is no suitable replacement to timber receipts for AOCC's members. My expectation is that AOCC's member counties will elect to receive O&C Act receipts going forward, forgoing SRS payments for the O&C timberlands.

10.     When counties elect to receive O&C Act receipts, *every project* which generates timber receipts on O&C timberland provides county funding. Timber production on O&C timberland is therefore crucial to the AOCC's members and their constituents. While O&C Act receipts are still a shell of their former selves, and BLM is still failing to manage O&C timberlands on a sustained yield bases, AOCC is confident that BLM's planned timber sales will put AOCC's members on better footing than they are with SRS payments.

11.     The BLM's Last Chance Forest Management Project (Last Chance Project) is instrumental to BLM' s satisfaction of the demands of the O&C Act. Pursuant to the BLM's 2016 Resource Management Plan (2016 RMP), the BLM has declared an "allowable sale quantity" (ASQ) which represents the volume of timber which must be harvested annually to satisfy the BLM's land use plan. The Last Chance Project will satisfy 100 percent of the Medford District Annual Sustained Yield Unit's ASQ for two fiscal years, and 57 percent of the ASQ for a third fiscal year. All told, the Last Chance Project is expected to yield 70-80 mmbf of volume. Since around 95 percent of the Last Chance Project will take place within O&C timberlands, this project represents a significant portion of timber receipts generated for the next three fiscal years. The Last Chance Project area is located within Douglas, Jackson, and Josephine counties—all members of AOCC. 75 percent of the receipts generated from the Last Chance Project will be earmarked for the 18 O&C counties. Without this project, those counties would get substantially reduced (if any) receipts.

DECLARATION OF TIM FREEMAN - 6

12. Furthermore, the Last Chance Project will stimulate economic activity in southwestern Oregon, with timber from the project going to mills in AOCC's member counties. Although the Last Chance Project, on its own, does not represent the sustained yield management of all O&C timberlands with the BLM's Medford District, the project is a step in the right direction towards sustained yield management, and the self-sufficiency of AOCC's member counties.

13. As AOCC's members choose to receive shared timber receipts pursuant to the O&C Act, every BLM project which is delayed or halted is, quite literally, dollars out of AOCC's members' budgets. The O&C Act provides general funds to the O&C counties. Therefore, fewer timber receipts mean less money to the counties for public safety and policing, social services for families, children, and seniors, road maintenance, veteran services, waste management, parks, and a whole slew of other services critical to the health and wellbeing of the populace. This lost revenue cannot be replaced. For instance, Douglas County has had to make extremely difficult choices to cope with budget shortcomings caused by insufficient or unavailable timber receipts. In 2017, Douglas County stopped providing library services. Douglas County government has eliminated approximately 500 staff members since the listing of the spotted owl.[1] Another AOCC member, Polk County, is currently facing the difficult decision of whether to close down its fairgrounds, which provide not only a community meeting place and event center, but also a rendezvous location in the event of natural disasters, like the 2020 wildfires when Polk County's

---

[1] "Douglas County libraries to close after voters reject funding," The Oregonian, March 31, 2017, http://www.oregonlive.com/politics/index.ssf/2017/03/douglas_county_libraries_to_cl.html.

DECLARATION OF TIM FREEMAN - 7

fairgrounds were used to shelter livestock evacuated from the fire line.[2] These closures are the ugly reality for Oregon's rural counties. Shared timber receipts make up a significant portion of AOCC's members' budgets. When the receipts are depressed or not available, county services like libraries and fairgrounds face closure. If O&C Act shared receipts do not increase, AOCC's members will be faced with even more dire budget shortfalls, putting schooling, policing, roads, and more at risk. This highlights the importance of cases, like this one, where the plaintiffs are requesting the vacatur of a great project on O&C timberlands. Plaintiffs are putting their purported interest in stopping federal timber harvest above the human needs of AOCC's members' constituents who, without O&C Act funding, face the loss of essential county services.

14. The Last Chance Project will have benefits beyond just the timber receipts generated. The project will bring job opportunities to southwestern Oregon. Federal timber harvest has significant beneficial downstream economic impacts, providing jobs for timber fallers, truckers, road construction, mill workers, and helps support all aspects of the economy. BLM timber harvest is also vital to alleviating bottlenecks in the log market, which is necessary to lower lumber and housing costs.

15. Many of the O&C counties have experienced the sting of mill closures in recent years. In 2024, seven mills closed, taking 700 jobs with them. This included Western Cascade Industries in Lincoln County, C&D Lumber Co. in Douglas County, the Rosboro Co. stud mill in Springfield (Lane County), Hampton Lumber in Banks (Washington County), and Interfor in Philomath (Benton County). In 2025, Roseburg Forest Products laid off 107 workers at its

---

[2] Hayes, David, "County fairgrounds faces closure in 2026," Polk County Itemizer Observer, February 10, 2026, https://www.polkio.com/news/county-fairgrounds-faces-closure-in-2026/article_393b24ef-ba51-4ef0-99ed-f1d8a7260aeb.html#:~:text=3%20hrs%20ago-,Fair%20Board%20President%20Tim%20Ray%20addresses%20nearly%20200%20concerned%20citizens,funding%20is%20not%20made%20available.

hardwood mill in Dillard, Oregon, and in 2026 laid off 146 workers at its plywood plant in Riddle, Oregon, continuing the string of mill closures. A common theme among these closures is a lack of reliable timber supply, due in large part to insufficient timber resources available from federal lands. Fires, private forestland regulations, state forestland management plans, and federal forest management plans all shrink the pool of available timber. AOCC has an interest in promoting sustained yield management on the O&C timberlands, which would improve timber supplies and halt, or even remediate, recent mill closures.

16. The relief requested in this lawsuit would directly aggrieve AOCC and its members. Plaintiffs attempted vacatur of the Last Chance Project is precisely the type of lawsuit which is of great interest to AOCC. This project will produce timber receipts earmarked for AOCC's members' general funds to provide essential services and generate much-needed economic activity in light of recent mill closures. AOCC, on behalf of its member counties, is well positioned and dedicated to supporting BLM's approval of the Last Chance Project. Without this project, AOCC's members will suffer a significant economic loss.

17. The federal government does not adequately represent AOCC's interests. BLM has historically delayed, canceled, or modified forest management projects in response to litigation threats. BLM also has not kept pace with sustained yield management, repeatedly refusing to sell or offer for sale a sustained yield quantity of timber on an annual basis. This has resulted in numerous lawsuits between AOCC and BLM to require BLM to adhere to the terms of the O&C Act. AOCC has been a strong proponent of returning sustained yield forest management to the O&C timberlands and has often appeared as a plaintiff challenging the BLM's management of O&C timberlands. AOCC was a plaintiff in *Am. Forest Res. Council v. Nedd*, No. CV 15-01419 (RJL), 2021 WL 6692032 (D.D.C. Nov. 19, 2021), *Am. Forest Res.*

*Council v. Steed*, No. CV 16-1599 (RJL), 2019 WL 1440887 (D.D.C. Mar. 31, 2019), and *Am. Forest Res. Council v. Hammond*, 422 F. Supp. 3d 184 (D.D.C. 2019), *rev'd and remanded sub nom. Am. Forest Res. Council v. United States*, 77 F.4th 787 (D.C. Cir. 2023), among other cases, where AOCC asserted that the BLM was failing to comply with the sustained yield demands of the O&C Act. AOCC was also an intervenor in *Headwaters, Inc. v. Bureau of Land Mgmt., Medford Dist.*, 914 F.2d 1174 (9th Cir. 1990), where the Ninth Circuit held that the O&C Act was a "dominant use" statute, requiring timber production from the O&C timberlands. AOCC's interests are also narrower and primarily economic, whereas the BLM has a responsibility to the public as a whole.

18. For all of the reasons explained above, AOCC seeks to intervene in this case to defend the BLM's Last Chance Project, to protect the AOCC's members' legal interest in the lawsuit challenging these projects and related timber sales, and to otherwise protect AOCC's members from irreparable harm.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of American that the foregoing is true and correct.

Executed this __17th__ day of February, 2026 at Roseburg, Oregon.

_____
Tim Freeman, AOCC President

DECLARATION OF TIM FREEMAN - 10