**UNITED STATES DEPARTMENT OF THE INTERIOR**
**Bureau of Land Management**
Grants Pass Field Office
2164 NE Spalding Avenue
Grants Pass, Oregon 97526

**DECISION RECORD**
**Last Chance Forest Management Project**
**DR#4 King Graves Timber Sale**
DOI-BLM-ORWA-M070-2022-0007-EA
February 2026

## I.     Introduction

The Medford District Bureau of Land Management (BLM), Grants Pass Field Office (GPFO) has prepared the Last Chance Forest Management Project (LCFMP) Revised Environmental Assessment (REA), DOI-BLM-ORWA-M070-2022-0007-EA. The REA analyzed the effects of commercial and non-commercial treatments and associated activities on up to 11,686 acres of BLM-administered lands within a 56,888-acre project area. The REA is not-self executing and did not authorize any project activities or ground-disturbing actions. Rather, as explained in the REA (p. 4, section 1.3), BLM will implement the treatments analyzed in the REA through individual Decision Records authorizing treatments specified in each decision. Proposed treatments in this decision, Decision Record #4 (DR #4), include variable retention harvest (VRH), commercial thinning, selection harvest, activity fuels reduction, and hazardous fuels reduction. Associated activities include temporary and permanent road and landing construction, quarry use, road renovation, improvement, and maintenance, timber haul, and road closure.

DR#4 documents the decision to implement a portion of forest management activities proposed and analyzed in the LCFMP REA. The BLM anticipates releasing future Decision Records authorizing additional forest management actions proposed in the LCFMP REA.

## II.  DECISION

Based on the LCFMP Revised EA and associated Finding of No Significant Impact, it is my decision to implement the following actions described and analyzed in Alternative 2 and 2a of the LCFMP REA. This Decision will implement actions in the locations described below and includes all associated Best Management Practices (BMP's) and Project Design Features (PDFs) as described in the REA (Appendix C). BMPs and PDFs are an integral part of the Project and were developed to avoid or reduce the potential for adverse impacts to resources. Where applicable, PDFs reflect Best Management Practices (BMPs) as outlined in the 2016 (SWO ROD/RMP) (BLM 2016, Appendix C) and standard operating procedures.

The activities authorized in this Decision Record include:

1. Non-Commercial Treatments:
   - 708 acres of new (HFR) treatments. These HFR treatments occur in LCFMP REA units that were analyzed for either commercial timber harvest or HFR treatments, however commercial treatment in these units is hereby deferred from any future LCFMP decisions. As stated in the REA, 6,365 acres proposed for commercial timber harvest which were not previously treated for HFR, will be evaluated for implementation of HFR treatments if not treated commercially under subsequent Decision Records (REA, p. 13, 21).

HFR treatments include slashing, hand piling, hand pile burning, chipping, lop and scatter, and/or understory burning (see REA, p. 11). See attached maps for locations of HFR treatments.

2. Forest Management Activities Associated with Commercial Treatments:
   - 155 acres of Harvest Land Base Low Intensity Timber Area variable retention harvest,
   - 4 acres of Harvest Land Base Low Intensity Timber Area road construction right-of-way clearing,
   - 15 acres of Harvest Land Base Low Intensity Timber Area commercial thinning,
   - 197 acres of Harvest Land Base Uneven-Aged Timber Area selection harvest,
   - 2 acres of Harvest Land Base Uneven-Aged Timber Area road construction right-of-way clearing,
   - 41 acres of Outer and Middle Riparian-Dry Zone commercial thinning,
   - 2 acres of District-Designated Reserve – Timber Production Capability Classification selection harvest,
   - 5 acres of roadside vegetation maintenance treatments,
   - 435 acres of activity fuels treatments,
   - 2.65 miles of road construction,
   - 30.76 miles of road renovation, and
   - 33.41 miles of haul roads.

These commercial treatments overlap the same footprint as 77 acres of maintenance HFR treatments that were authorized in LCFMP DR #2. Map 12 below depicts where this overlap of treatments occurs. As stated in the REA, maintenance HFR treatments overlap with commercial treatments on the same footprint in some areas of the project (REA, p. 11, 21-23). There is potential for future LCFMP decisions to authorize commercial treatments that overlap additional maintenance HFR treatments.

Authorized logging operations include ground-based and cable systems. This Decision authorizes commercial timber harvest, road and landing construction, roadside vegetation maintenance, and follow-up activity fuels treatments on approximately 435 acres of BLM-administered lands in the following locations:

   - T. 33 S., R. 4 W., Sec. 17, 19, 21, 29, 31;
   - T. 33 S., R. 5 W., Sec. 25, Willamette Meridian, Oregon.

For an overview of the location of commercial harvest units, road construction, road renovation, and road improvement authorized in DR #4, (see Maps 1-11 below). Acres are rounded to the nearest whole acre. The following summarizes the commercial treatment actions authorized by this Decision:

*Table 1. Summary of Commercial Harvest by Treatment Type*

| Commercial Treatments | Total Acres (Rounded) |
|---|---|
| Variable Retention Harvest (VRH) | 155 |
| Commercial Thin (CT) | 56 |
| Selection Harvest (SH) | 199 |
| Roadside Vegetation Maintenance (RS) | 5 |
| Road Construction | 6 |
| *Total* | *421* |

*Table 2. Commercial Timber Harvest Units*

| Unit | Acres | LUA | Logging System | Prescription (Type, Target BA and/or RD) | EA Alternative |
|---|---|---|---|---|---|
| 17-1 | 4 | HLB-UTA | GB | SH GS 15-25 BA; 32% RD | 2 |
| 19-7 | 26 | HLB-LITA / HLB-UTA | GB / C | VRH 40-60 BA, Skip / SH GS 0-20 BA, SH 80-100 BA; 21% RD | 2 |
| 21-1 | 42 | HLB-LITA / RR-dry / DDR-TPCC | GB / C | VRH 45-90 BA / CT 120-130 BA / SH 80-100 BA | 2 |
| 20.0 RW | 1 | HLB-LITA | GB | ROW CC 0 BA | 2 |
| 21-2 | 10 | HLB-UTA | GB | SH GS 15-25 BA, SH 90- | 2 |

| | | | | 110 BA; 21% RD | |
|---|---|---|---|---|---|
| 25-12 | 34 | HLB-UTA | GB / C | SH 80-100 BA; 23% RD | 2 |
| 29-7 | 46 | HLB-LITA / HLB-UTA / RR-dry | GB / C | VRH 40-60 BA. Skip / SH GS 0-20 BA; 23% RD / CT 120-130 BA | 2 |
| 30.4 RW | 1 | HLB-LITA | GB | ROW CC 0 BA | 2 |
| 30.5 RW | 1 | HLB-LITA | GB | ROW CC 0 BA | 2 |
| 29-8 | 66 | HLB-LITA / HLB-UTA / RR-dry | GB / C | VRH 40-60 BA, Skip / SH 80-100 BA; 23% RD / CT 120-130 BA | 2 |
| 29-9 | 31 | HLB-LITA / HLB-UTA / RR-dry | GB / C | VRH 30-50 BA / SH GS 0-20 BA / CT 120-130 BA | 2 |
| 29.4 RW | 1 | HLB-LITA | GB | ROW CC 0 BA | 2 |
| 31-2 | 13 | HLB-UTA | GB / C | SH GS 0-20 BA, SH 80-90 BA; 36% RD | 2 |
| 31-3 | 28 | HLB-LITA / RR-dry | C | VRH 40-60 BA / CT 120-130 BA | 2 |
| 31-4 | 20 | HLB-LITA / HLB- | GB / C | CT 80-100 BA; 26% RD / SH 80-100 BA; 26% RD / | 2a |

| | | UTA / RR-dry | | CT 120-130 BA | |
|---|---|---|---|---|---|
| 31-5 | 90 | HLB-LITA / HLB-UTA / RR-dry | GB / C | VRH 40-50 BA, CT 80-120 BA; 20% RD / SH GS 0-20 BA, SH 80-90 BA; 20% RD / CT 120-130 BA | 2/2a |
| 31.4 RW | 2 | HLB-UTA | GB | ROW CC 0 BA | 2 |
| 21.1 RS | 2 | DDR-Roads | GB | RS | 2 |
| 29.0 RS | 1 | DDR-Roads | GB | RS | 2 |
| 31.0 RS | 1 | DDR-Roads | GB | RS | 2 |
| 5.0 RS | 1 | DDR-Roads | GB | RS | 2 |
| **Total** | **421** | | | | |

**Legend:**

| **Land Use Allocation (LUA)** | **Logging System** | **Prescription Types** |
|---|---|---|
| HLB-LITA – Harvest Land Base-Low Intensity Timber Area<br><br>HLB-UTA – Harvest Land Base Uneven-Aged Timber Area<br><br>RR-dry – Riparian Reserve-Dry Outer and Middle Zone<br><br>DDR-TPCC – District Designated Reserve- | GB – ground-based<br><br>C – cable-skyline | VRH – variable retention harvest<br>CT – commercial thinning<br>SH – selection harvest<br>GS – group selection harvest<br>BA – basal area<br>RD – relative density post-harvest<br>ROW CC – road construction right-of-way clearing<br>RS – roadside vegetation maintenance |

| Timber Production Capability Classification DDR-Roads – District Designated Reserve-Roads | | |
|---|---|---|
|  |  |  |

The REA explains that "the prescribed treatments within each stand are driven by a number of factors including LUA, NSO occupancy/habitat type, stand growth rates, species composition, and stand composition/structure" (p. 13). In units 31-4 and 31-5, a commercial thinning treatment, as analyzed in REA Alternative 2a, was prescribed in portions of each unit where the LUA is HLB-LITA and the stand is relatively young, approximately 50 years old. In these portions of these units a commercial thin reduces stand density and promotes the growth and vigor of the retained trees. This also meets the need of the project to produce timber to contribute to the attainment of the declared ASQ while enhancing the growth of retained trees which could be available for harvest in the future, ensuring a sustained yield of timber over time (REA, p. 13, 47, 49).

If these relatively young stands were to be variable retention harvested now as opposed to commercially thinned, the anticipated volume of future re-entry through a commercial thinning or regeneration harvest would be lost. In other words, conducting VRH now would occur prior to the culmination of mean annual increment (the point in a forest stand's growth where the average volume production per year reaches its maximum). This would result in a lost opportunity for future growth and decreased return on investment in these stands because future harvest would be delayed or precluded due to insufficient growth. Thinning now allows for more volume growth and future harvest re-entry.

The following landing construction, road construction, road renovation, road decommissioning, and timber haul are authorized by this Decision. For a visual overview of locations of the road and landing construction (landings are located along haul roads), renovation, improvement, and timber haul, (see Maps 1-11). Road lengths are rounded to the nearest tenth of a mile.

- Permanent road construction of approximately 1.8 miles in:
  - T. 33 S., R. 4 W., Sec. 20, 21, 29, 30, 31, Willamette Meridian, Oregon.

- Temporary road construction of approximately 1.0 miles in:
  - T. 33 S., R. 4 W., Sec. 29, 31,
  - T. 33 S., R. 5 W., Sec. 25, Willamette Meridian, Oregon.

- Road renovation, and maintenance of approximately 31.0 miles in:
  - T. 33 S., R. 4 W., Sec. 19, 20, 21, 28, 29, 30, 31, 32,
  - T. 33 S., R. 5 W., Sec. 25, 36,
  - T. 34 S., R. 4 W., Sec. 5, 6, 8, 17, 20, 28, 29, 32,
  - T. 34 S., R. 5 W., Sec. 1, 2, 9, 10, 11, Willamette Meridian, Oregon.

- Hauling of timber on approximately 33.8 miles (of which 26.4 miles would be available for wet season haul; an additional 7.0 miles would be available for wet season haul if the purchaser chooses to add adequate rock to the road) of BLM and privately administered roads in:
  - T. 33 S., R. 4 W., Sec. 19, 20, 21, 28, 29, 30, 31, 32,
  - T. 33 S., R. 5 W., Sec. 25, 36,
  - T. 34 S., R. 4 W., Sec. 5, 6, 8, 17, 20, 28, 29, 32,
  - T. 34 S., R. 5 W., Sec. 1, 2, 9, 10, 11, Willamette Meridian, Oregon.

- BLM determined that 5 segments of road will move forward as long-term closure, for an approximate total of 1.3 miles, and 9 segments of temporary road will move forward as long-term closure, for an approximate total of 1.3 miles. These road segments are located in the following locations:
  - T. 33 S., R. 4 W., Sec. 29, 30, 31,
  - T. 33 S., R. 5 W., Sec. 25,
  - T. 34 S., R. 4 W., Sec. 6, Willamette Meridian, Oregon.

Table 3. Treatments Authorized to Date in Existing Last Chance DRs by Acre.

| Decision Record | Commercial Treatments | Hazardous Fuels Reduction Treatments | Treatment Acres in DR That Overlap with Treatment Acres in a Previously Issued LCFMP DR | Total New Treatment Footprint* Acres Authorized in DR |
|---|---|---|---|---|
| DR #1 | 575 | 0 | NA | 575 |
| DR #2 | 0 | 5,081 | 24 (DR#1) | 5,057 |
| DR #3 | 383 | 0 | 5 (DR#2) | 378 |
| DR #4 | 421 | 708 | 77 (DR#2) | 1,052 |
| TOTAL | 1,379 | 5,789 | 106 | 7,062 |

*A Footprint Acre may have multiple overlapping treatment occurring on it but was only analyzed in the REA as 1 acre. This column in the tracking table accounts for the new footprint acres by DR that were not already authorized in a previous DR.

The BLM is tracking acres by NSO habitat type being treated in each Decision Record ensuring that the acres treated and the associated effects do not exceed what is disclosed in the associated Biological Opinion.

Table 4. Total NSO Habitat Acres Treated to Date in Existing Last Chance DRs

| All Treatments | | | |
|---|---|---|---|
| Treatment Acres by Habitat Effect Type | Acres in Biological Opinion | Acres Authorized in DRs 1 - 4 | Remaining Acres in Biological Opinion Not Authorized in DRs |
| NRF Modified | 2,252 | 1,780 | 472 |
| NRF Downgraded | 0 | 0 | 0 |
| NRF Removed | 3,662 | 1,634 | 2,028 |
| Dispersal-only Modified | 1,731 | 1,324 | 407 |
| Dispersal-only Removed | 2,508 | 1,167 | 1,341 |
| Treatments in Non-Habitat (No Effect)* | 1,934* | 1,140* | 794* |
| **GRAND TOTAL** | **12,087** | **7,044** | **5,043** |
| Critical Habitat Only | | | |
| Treatment Acres by Habitat Effect Type | Acres in Biological Opinion | Acres Authorized in DRs 1 - 4 | Remaining Acres in Biological Opinion not Authorized in DRs |
| NRF Modified | 1,295 | 1,054 | 241 |
| NRF Downgraded | 0 | 0 | 0 |
| NRF Removed | 791 | 241 | 550 |
| Dispersal-only Modified | 671 | 489 | 182 |
| Dispersal-only Removed | 336 | 122 | 214 |
| Treatments in Non-Habitat (No Effect)* | NA* | 397* | NA* |
| **GRAND TOTAL** | **3,093** | **2,303** | **1,187** |

* No effect treatments are identified in the Biological Assessment and Biological Opinion, but are not carried forward for further analysis and are not split out for critical habitat analysis in the Biological Opinion because those treatments do not present any pathway, individually or collectively when considered with the entirety of the project, for effects to the species or its critical habitat.

Decision Record
DOI-BLM-ORWA-MO70-2022-0007-EA

8

### III. COMPLIANCE AND CONFORMANCE

The BLM signed the Southwestern Oregon Record of Decision and Resource Management Plan ROD/RMP (SWO ROD/RMP) on August 5, 2016. The BLM designed all of the alternatives for the LCFMP to conform with the management direction in the SWO ROD/RMP, which addresses how the BLM will comply with applicable laws, regulations, and policies in western Oregon including, but not limited to the: Oregon and California Railroad (O&C) Act, Federal Land Policy and Management Act (FLPMA), Endangered Species Act (ESA), National Environmental Policy Act (NEPA), National Historic Preservation Act (NHPA), Clean Air Act, and Clean Water Act.

### IV. PUBLIC INVOLVEMENT

The GPFO mailed public scoping letters in December of 2020 to adjacent landowners, permittees, agencies, and other interested citizens. The BLM received five comments during the 30-day public scoping period. On July 15, 2021, the GPFO mailed a public scoping letter to interested mining claimants. The BLM did not receive any comments. In August of 2022, the Rum Creek Fire ignited via lightning strike in the northwestern portion of the GPFO. This fire did not burn within the LCFMP. However, the BLM put project development on hold while the agency worked to manage the fire and conduct post-fire Emergency Stabilization and Rehabilitation (ESR). In January of 2023, the BLM resumed planning the LCFMP. On February 22, 2023, the BLM mailed scoping letters to tribal governments including the Cow Creek Band of Umpqua, Confederated Tribes of Grand Ronde, and the Confederated Tribes of the Siletz Indians. The BLM did not receive any comments. On July 8, 2024, the BLM published a draft Environmental Assessment (EA) on ePlanning for a 30-day public comment period and received 917 comments. The GPFO posted a revised draft of the EA for public review and comment on BLM's National NEPA Register (ePlanning) for an additional 14-day public review comment period from March 14th to March 28th of 2025. The BLM's responses to these comments are located on eplanning as Attachment 2 and incorporated into the final Revised EA where needed.

### V.  RATIONALE FOR DECISION

The rationale for my decision is based on the consideration and evaluation of how well the Purpose and Need are met, public input, and the associated environmental consequences of implementing or not implementing the LCFMP, as analyzed in the REA, and documented in the FONSI. My Decision to authorize Alternative 2 and 2a, as described in the Decision section above, best fits the Purpose and Need for action as presented in the REA, while providing protection for resources, including but not limited to ESA listed and Special Status species.

The REA analyzed four alternatives for the management of the BLM-administered lands in the Project Area, a No Action Alternative (Alternative 1), and three action alternatives (Alternatives 2, 2a and 3). The action alternatives vary in number of acres treated per year, areas that can be treated, commercial and non-commercial vegetation treatment types, and hazardous fuels reduction treatments. All action alternatives were designed to meet the Purpose and Need for the project; the degree to which each alternative meets this provides the basis for my Decision.

Alternative 1 would not meet the Purpose and Need for this project. Under the No Action Alternative, no actions would be taken at this time to produce timber to contribute to the attainment

of the declared ASQ, forest stands would remain in an overly dense state making them less resilient to disturbance, and hazardous fuels would continue to accumulate.

A Finding of No Significant Impact (FONSI) explains that the alternatives I have chosen have been analyzed in an Environmental Assessment and have been found to have no significant impacts, thus an Environmental Impact Statement is not required and will not be prepared.

The BLM is making this forest management decision effective on the date this decision is posted on e-planning. After this date, the BLM will proceed expeditiously with the timber sale contracting process.

## VI. RIGHT OF APPEAL:

This decision may be appealed to the Interior Board of Land Appeals (IBLA), Office of Hearings and Appeals, in accordance with the regulations contained in 43 CFR Part 4. The notice of appeal must be filed no later than 30 days after the date of receiving notice of this decision under 43 CFR 403(c)(2). Any notice of appeal must be filed with the IBLA and must include a copy of the decision being appealed, a statement of standing, and a statement of timeliness. If you wish to file a petition for a stay of the effectiveness of this decision during the time that your appeal is being reviewed by the Board, the petition for a stay must show sufficient justification based on the following criteria at 43 CFR 4.405(b). The appellant must serve a copy of the notice of appeal and any accompanying documents on the office of the officer who made the decision, each person or entity named in the decision, and the appropriate Office of the Solicitor at the time of filing with IBLA (see 43 CFR 4.403(b); 4.407(b)). Parties must also serve the Office of the Regional Solicitor at 601 SW 2nd Ave, Suite 1950, Portland, OR 97204-3172. Service on a party known to be represented by an attorney or other designated representative must be made on the representative. If a statement of reasons for the appeal is not included with the notice of appeal, it must be filed within 30 days after the record on appeal is filed with the IBLA. Failure to file a statement of reasons within the time required will subject the challenged decision to summary affirmance (see 43 CFR 4.412(a)).

## VII.        APPROVAL



JUSTIN KELLY    Digitally signed by JUSTIN KELLY
Date: 2026.02.10 10:56:57 -08'00'

Justin L. Kelly

Field Manager

Grants Pass Field Office

Decision Record
DOI-BLM-ORWA-MO70-2022-0007-EA

10

**ATTACHMENTS:**

Map 1.



Map 2.



Map 3.



Map 4.



Map 5.



Map 6.



Map 7.



Exhibit B
Page 17 of 22

Map 8.



Map 9.



Map 10.



Map 11.



Map 12.

