Michael E. Haglund, OSB No. 772030
e-mail: mhaglund@hk-law.com
Julie A. Weis, OSB No. 974320
e-mail: weis@hk-law.com
Christopher T. Griffith, OSB No. 154664
e-mail: cgriffith@hk-law.com
Haglund Kelley LLP
2177 SW Broadway
Portland, Oregon 97201
Phone: (503) 225-0777
Facsimile: (503) 225-1257

Attorneys for Defendant-Intervenor
Murphy Company

Dominic M. Carollo, OSB No. 093057
Email: dcarollo@carollolegal.com
Nolan G. Smith, OSB No. 215034
Email: nsmith@carollolegal.com
Audrey F. Boyer, OSB No. 106560
Email: aboyer@carollolegal.com
Carollo Law Group
2315 Old Highway 99 South
Roseburg, OR 97471
Phone: (541) 957-5900
Facsimile: (541) 957-5923

Attorneys for Defendant-Intervenor
Association of O&C Counties

Sara Ghafouri, OSB No. 111021
Email: sghafouri@amforest.org
American Forest Resource Council
700 N.E. Multnomah, Suite 320
Portland, Oregon 97232
Phone: (503) 222-9505
Facsimile: (503) 222-3255

Attorney for Defendant-Intervenor
American Forest Resource Council

**UNITED STATES DISTRICT COURT**
**DISTRICT OF OREGON**
**MEDFORD DIVISION**

| | |
|---|---|
| **KLAMATH-SISKIYOU WILDLANDS CENTER, OREGON WILD, and CASCADIA WILDLANDS,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**DOUGLAS JAMES BURGUM in his official capacity as Secretary of the Interior, U.S. FISH & WILDLIFE SERVICE, and U. S. BUREAU OF LAND MANAGEMENT,**<br><br>**Defendants,**<br><br>**and**<br><br>**MURPHY COMPANY,**<br><br>**Defendant-Intervenor,**<br><br>**and**<br><br>**AMERICAN FOREST RESOURCE COUNCIL, an Oregon non-profit corporation, and ASSOCIATION OF O&C COUNTIES, an unincorporated Association,**<br><br>**Defendant-Intervenors.** | Case No. 1:25-cv-02296-MTK<br><br>**DEFENDANT-INTERVENORS' JOINT RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION TO SUPPLEMENT THE ADMINISTRATIVE RECORD** |

Defendant-Intervenors Murphy Company, American Forest Resource Council, and Association of O&C Counties jointly submit this response in opposition to Plaintiffs' Motion to Supplement the Administrative Record. Plaintiffs seek leave to offer the newly-created Declaration of Erich Reeder (Reeder Declaration) as extra-record evidence under the first and third exceptions recognized in *Lands Council v. Powell*, 395 F.3d 1019, 1030 (9th Cir. 2005). Plaintiffs' motion should be denied because the declaration is not necessary to explain technical

terms or complex subject matter related to spotted owl surveys, nor is it necessary to determine whether the agencies considered relevant factors. Instead, the declaration is an attempt to insert extra-record scientific opinion second guessing the U.S. Fish and Wildlife Service and Bureau of Land Management's (the agencies) reasoned decisions, which are entitled to deference.

## I. INTRODUCTION.

Plaintiffs' motion attempts to present a post-decision expert opinion to persuade this Court to improperly second guess the agencies' scientific expertise. Plaintiffs' Motion frames the Reeder Declaration as neutral background material that merely explains technical concepts or identifies relevant factors the Defendant agencies ignored. But that description of the declaration bears no resemblance to the document itself. Rather, the declaration selectively interprets technical literature, offers field observations and purported professional opinions about spotted owl behavior, criticizes the agencies' treatment of "Status Unknown" detections, and attempts to create an evidentiary record for Plaintiffs' merits arguments. That is not a permissible use of extra-record evidence in an Administrative Procedure Act case. Instead, it is an attempt to introduce expert testimony without going through the proper steps for doing so.

Administrative Procedures Act (APA) review is ordinarily confined to the record before the agency when it made its decision. The Ninth Circuit's exceptions to that rule are narrow, and Plaintiffs bear a heavy burden to justify supplementation. Plaintiffs have not met that burden. Plaintiffs' substantive disagreement with how the agencies interpreted survey results does not justify adding a new declaration from a former agency technician, particularly where the declaration advances Plaintiffs' substantive theory that the agencies should have treated



HAGLUND KELLEY LLP
ATTORNEYS AT LAW
2177 SW BROADWAY
PORTLAND, OR 97201

certain owl detections differently.

The core substantive issue Mr. Reeder's declaration attempts to address is whether the agencies properly categorized "status unknown" sites with isolated owl detections. That issue was addressed extensively at the preliminary injunction stage. *See* ECF No. 55 at 14-17. The agencies used the 2012 survey protocol for owl surveys, which they regard as the best available science. *Id.* Plaintiffs take the position that a separate survey protocol, the passive acoustic monitoring method, is more appropriate here, and that a study analyzing the results of passive acoustic monitoring supports Plaintiffs' opinion that status unknown sites should be treated as occupied. *Id.*

Before advancing those arguments at the summary judgment stage, Plaintiffs ask the Court to first supplement the administrative record with the Reeder Declaration, which advocates Plaintiffs' preferred interpretation of status unknown sites. Mr. Reeder was a Bureau of Land Management (BLM) and Forest Service field technician who designed and implemented wildlife surveys until recently leaving federal employment. Reeder Decl. ¶¶ 4, 5, 6, 8, 9. He does not claim to be a biologist or ornithologist. His declaration notably does not explain his experience with or educational qualifications for interpreting scientific studies regarding owls or applying his conclusions about those scientific studies to owl survey data.

At root, Plaintiffs' motion distorts the nature of APA review cases. The Court's role in an APA case is to determine whether the agency adequately analyzed and justified its opinion, not to second guess agency substantive decisions.

## II. <u>STANDARD OF REVIEW</u>.

Under the APA, the Court's role is to determine whether the agencies' decisions were "arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). A court may not substitute its judgment (or that of Plaintiffs or Plaintiffs' expert) for that of the agency. *Lands Council v. McNair*, 537 F.3d 981, 987 (9th Cir. 2008) (en banc), *overruled in part on other grounds by Winter v. Nat. Res. Def. Council*, 555 U.S. 7 (2008). Rather, an agency's decision may only be reversed as arbitrary and capricious "if the agency relied on factors Congress did not intend it to consider, entirely failed to consider an important aspect of the problem, or offered an explanation that runs counter to the evidence before the agency or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Id.* (internal citations omitted).

Judicial review under the APA is generally confined to "the whole record" before the agency at the time of its decision. 5 U.S.C. § 706; *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971), *overruled on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977). The administrative record "consists of all documents and materials directly or indirectly considered by agency decision-makers . . . ." *Thompson v. U.S. Dep't of Labor*, 885 F.2d 551, 555 (9th Cir. 1989) (internal citations omitted). The agency's certification of an administrative record is entitled to a "presumption of administrative regularity." *Save the Colorado v. U.S. Dep't of the Interior*, 517 F. Supp. 3d 890, 899 (D. Ariz. 2021).

While it is almost always inappropriate to consider extra-record information, the Ninth Circuit recognizes four narrow circumstances in which extra-record evidence may be considered

by a reviewing court: (1) when necessary to determine whether the agency considered all relevant factors and explained its decision; (2) when the agency relied on documents not in the record; (3) when necessary to explain technical terms or complex subject matter; or (4) when Plaintiffs make a showing of agency bad faith. *Lands Council v. Powell*, 395 F.3d at 1030. Those exceptions are narrowly construed and approached with caution to preserve the general rule that agency decisions are reviewed on the record. *San Luis & Delta-Mendota Water Auth. v. Jewell*, 747 F.3d 581, 603 (9th Cir. 2014).

The party seeking supplementation of the administrative record bears the burden of overcoming by clear evidence the presumption of regularity afforded to the agency's designation and certification of the administrative record. *Pinnacle Armor, Inc. v. U.S.*, 923 F. Supp. 2d 1226, 1232 (E.D. Cal. 2013). There is "a thumb on the scale against supplementation of" the administrative record. *Blue Mountains Biodiversity Project v. Jeffries*, 99 F.4th 438, 446 (9th Cir. 2024).

## III. ARGUMENT.

### A. The Reeder Declaration Post-Dates the Challenged Biological Opinion, and Plaintiffs' Motion Should Be Denied on that Basis Alone.

Under binding Ninth Circuit case law, evidence created after the agency's decision cannot be added to the administrative record. "[E]xceptions to the normal rule regarding consideration of extra-record materials only apply to information available at the time, not post-decisional information." *Tri-Valley CAREs v. U.S. Dep't of Energy*, 671 F.3d 1113, 1130 (9th Cir. 2012) (internal citations omitted); s*ee also* *Cachil Dehe Band of Wintun Indians of Colusa*



HAGLUND KELLEY LLP
ATTORNEYS AT LAW
2177 SW BROADWAY
PORTLAND, OR 97201

*Indian Cmty. v. Zinke*, 889 F.3d 585, 600 (9th Cir. 2018). This Court recognized that principle very recently in addressing Plaintiffs Cascadia Wildlands and Oregon Wild's attempt to add declarations to the administrative record in another timber sale case:

> Courts may allow supplementation of the record to "consider such evidence relevant to the substantive merits of the agency decision only for the limited purpose of background information or to determine whether the agency considered all relevant factors." *Thompson*, 885 F.2d at 555 (citations omitted). Information that post-dates the agency's decision, however, is not admissible. *Tri-Valley CAREs v. U.S. Dep't of Energy*, 671 F.3d 1113, 1130–31 (9th Cir. 2012). Specifically, "post-decision information may not be advanced as a new rationalization for sustaining or attacking an agency's decision because it inevitably leads the reviewing court to substitute its judgment for that of the agency." *Id.* (quotation marks and citation omitted).

*Cascadia Wildlands v. U.S. Bureau of Land Mgmt*, No. 6:24-CV-01641-MTK, 2026 WL 1346855, at *8 (D. Or. May 14, 2026), *reconsideration denied,* No. 6:24-CV-01641-MTK, 2026 WL 1998555 (D. Or. July 9, 2026).[1]

Here, Mr. Reeder signed his declaration on August 20, 2026, years after the agency adopted its 2023 Biological Opinion. On that basis alone, his declaration is inadmissible as post-decision evidence. Plaintiffs attempt to sidestep this barrier by arguing that the declaration only provides explanation for the information available to the agencies at the time of the Biological Opinion. Plaintiffs claim that "[t]he declaration does not introduce this information for the first time; it explains information the agencies already held in terms that allow the Court

[1] Plaintiffs appear to cite this case but incorrectly title it *Blue Mountains Biodiversity Project,* No. 6:24-cv-01641-MTK. They also fail to address the key holding or distinguish the present dispute from that one, where the Court rejected their attempt to introduce declarations, including one from Mr. Reeder, as post-decisional.

to determine whether the agencies grappled with it." Plfs.' Mot. at 18.

Setting aside that the declaration does far more than explain documents in the record, that distinction does not save the declaration. Plaintiffs cite no case law for the proposition that a declaration post-dating the challenged decision but explaining the record is proper supplementation. If the question is whether the agencies adequately addressed the survey information, detection categories, and scientific materials available at the time of the Biological Opinion, that inquiry must be conducted on the record the agencies actually considered. Mr. Reeder's later declaration does not become contemporaneous record material merely because it discusses subjects that existed before the decision. The agency did not review the declaration beforehand and, thus, had no opportunity to respond. The declaration remains a post-decisional litigation document that invites the Court to improperly evaluate the agencies' decision through a new expert lens rather than through the administrative record itself.

### B. Plaintiffs Have Not Shown That the Reeder Declaration Is Necessary to Explain Technical Terms or Complex Subject Matter.

Plaintiffs rely heavily on the third *Lands Council* exception, arguing that the Reeder Declaration is needed to explain spotted owl survey methods, detection probabilities, passive acoustic monitoring, and the treatment of "status unknown" detections. But the exception does not apply simply because a case involves scientific or technical material, which is common in APA cases. The question under the third *Lands Council* exception is whether supplementation is necessary for the Court to understand technical terms or complex subject matter in the record. In response to a similar request, this Court cautioned:



HAGLUND KELLEY LLP
ATTORNEYS AT LAW
2177 SW BROADWAY
PORTLAND, OR 97201

> A party may not circumvent the general rule, that judicial review is limited to the administrative record, by simply labeling a declaration as "assisting the court." The declaration must be examined to determine whether it truly assists the court in understanding technical or complex matters or merely attempts to argue the sufficiency of the record.

*Alsea Valley Alliance v. Evans*, 143 F. Supp. 2d 1214, 1217 (D. Or. 2001). The Court found that the proffered declaration was "replete with expert opinion and argument that falls outside the record[,]" and that "although [the declarant] might be correct, that is not for the court to determine. The issue is whether the agencies decision can withstand scrutiny based on the information it had at the time the decision was made." *Id.* The very heart of APA review is whether the agency's expert decision making is contrary to the record before it at the time of its decision.

The Reeder declaration and Plaintiffs' motion do not attempt to establish that any concepts in the record are ambiguous or confusing. In fact, the declaration demonstrates that the relevant concepts are addressed in the record, including in the Biological Opinion and the 2012 survey protocol. *See, e.g.,* Reeder Decl. ¶¶ 25, 26 (discussion of Biological Opinion and protocol's treatment of floater owls and barred owl suppression of northern spotted owl calling behavior). Plaintiffs will, presumably, attempt to argue on summary judgment that the agencies' treatment of those concepts violates the APA. The Federal Defendants and intervenors disagree and will oppose that argument on the administrative record. But whether the agencies satisfied the APA turns on the record itself. The APA prohibits Plaintiffs' introduction of post-decision expert testimony to create a battle of experts.

A cursory examination demonstrates that the Reeder declaration suffers from the same defect as the declaration at issue in *Alsea Valley Alliance*. Plaintiffs' Motion argues that the declaration explains three technical issues, but the Motion's characterizations are inconsistent with the declaration itself. Rather than provide necessary explanations for the Court, Mr. Reeder advocates for his and Plaintiffs' preferred interpretations of information already in the record that relates to those three technical issues. To the extent plaintiff raises those topics at summary judgment, each of them will rise or fall on the record itself.

In all three cases, the declaration is advocacy, not an explanation. First, Mr. Reeder's discussion of survey methods and detection probabilities does not supply necessary technical explanation beyond the administrative record and does not purport to do so. *See* Plfs.' Mot. at 11 (Section I.B). The administrative record already contains the survey protocol, the Biological Opinion's discussion of the survey information, and the scientific materials on which the agencies relied. Mr. Reeder does not merely define specialized terminology or translate inaccessible technical concepts for the Court. Instead, he selects portions of the survey literature, draws his own inferences from that material, and advocates for Plaintiffs' preferred view of what the survey information should mean. *See, e.g.,* Reeder Decl. ¶ 24. Far from explaining the record, he explicitly proffers his opinion on how the agency should have assessed status unknown sites. *Id.* ¶ 25 ("In my professional opinion, Appel et al. is directly relevant to the management interpretation of single callback detections because it shows that requiring repeated detections in a breeding season or the response of both female and male NSOs in close proximity during a single visit can misclassify occupied sites as 'Status Unknown,' which FWS



HAGLUND KELLEY LLP
ATTORNEYS AT LAW
2177 SW BROADWAY
PORTLAND, OR 97201

then interprets as 'Unoccupied.'"). Whether the agencies reasonably relied on the survey materials before them is a merits question that properly rises or falls on the record itself, not om Mr. Reeder's post-hoc opinion.

Second, Plaintiffs' claim that the Reeder declaration merely "explains how the record's science bears on call-back surveys" is directly contrary to the declaration itself, which affirmatively advocates for a different interpretation of the survey data compared with that of the agencies. Plfs.' Mot. at 12 (Section I.C). The declaration urges the Court to adopt a competing view of how call-back survey results should be interpreted based on the results of the Appel et al. study regarding passive acoustic monitoring. Reeder Decl. ¶¶ 21–25. That is explicitly a competing scientific judgment offered for litigation that falls far outside the scope of the third *Lands Council* exception. The question at issue in this case is not whether Mr. Reeder would have interpreted survey results differently based on the scientific literature, but whether the agencies' decision violates the APA given the record before them at the time.

Third, Plaintiffs claim that the declaration is admissible because it provides "field context" and a "concrete sense of how the survey methods operate on the ground." Plfs.' Mot. at 12 (Section I.D). Plaintiffs' motion argues that paragraphs 13, 14, and 15 of the Reeder declaration provide that necessary background. *Id.* at 13. But a brief review of those paragraphs reveals that they do not explain how the surveys work at all. Instead, they provide Mr. Reeder's own anecdotal experience with surveys on other projects and <u>his</u> opinions drawn from the same. Unlike Mr. Reeder's declaration, the record already contains extensive discussion of how surveys work on the ground. To give one primary example, the 2012



HAGLUND KELLEY LLP
ATTORNEYS AT LAW
2177 SW BROADWAY
PORTLAND, OR 97201

protocol for owl surveys explains in detail how the surveys are designed and conducted. *See* FWS_015210-015251. Although the agency has not developed a protocol for passive acoustic monitoring (PAM), which is science that is still in development, the record includes documents that describe passive acoustic monitoring surveys in action as well. *See, e.g.,* FWS_004971-005000 (2021 Annual Report regarding PAM).

Simply put, Plaintiffs fail to demonstrate that any technical terms in the record require explanation and then fail to demonstrate that the declaration provides any such information. The third *Lands Council* factor does not apply.

### C. <u>Plaintiffs Have Not Shown That the Declaration Is Necessary to Determine Whether the Agencies Failed to Consider Relevant Factors</u>.

Plaintiffs next invoke the first *Lands Council* exception, contending that the declaration is necessary to determine whether the agencies considered all relevant factors. Plfs.' Mot. at 13. Plaintiffs' Motion claims that the declaration is necessary to show that the agencies failed to consider "status unknown" sites. *Id.* But the agencies clearly did address those issues, and Plaintiffs know it. This Court has already had occasion to consider the agencies' extensive discussion of "status unknown" sites in the Biological Opinion at the preliminary injunction stage, prior to review of the administrative record. *See* ECF No. 55 at 17 (discussing the BiOp's treatment of status unknown sites). Plaintiffs may again argue in their summary judgment motion that the agencies failed to provide a reasoned explanation for their treatment of status unknown sites. And again, Defendant and Intervenors will oppose, arguing that the record does in fact show that the agencies provided a reasoned explanation for their decisions. Nothing



HAGLUND KELLEY LLP
ATTORNEYS AT LAW
2177 SW BROADWAY
PORTLAND, OR 97201

about that issue requires supplementation.

Nor does the Reeder Declaration provide support for the assertion that the agencies failed to consider the issue. Rather, it explains exactly how the agency treats "status unknown" sites, explains why Mr. Reeder thinks that treatment is problematic, explains the consequences that follow from that approach in Mr. Reeder's view, and then advocates for a different treatment of the detections because of vocal suppression allegedly caused by the presence of barred owls. *See* Reeder Decl. ¶¶ 24–5. That is not evidence that the agencies failed to consider relevant factors. It is an extra-record merits argument that the agencies should have reached a different substantive conclusion.

The same is true of Mr. Reeder's related discussion of "floaters," which are isolated detections of owls. The Reeder Declaration does not show or claim that the agencies failed to consider floaters or ignored a relevant factor necessary to judicial review. The declaration in fact acknowledges that the agency did consider the issue. For example, paragraph 28 of the declaration quotes the Biological Opinion's discussion of floaters. Rather than claim that the agency failed to address the issue, the declaration offers Mr. Reeder's competing view of how floater behavior should affect the analysis and what consequences would follow from that treatment. *See* Reeder Decl. ¶¶ 29–30. That disagreement with the agencies' treatment of the issue is not a basis for supplementation under the first *Lands Council* exception.

Based on even a cursory read of the declaration, the first *Lands Council* exception does not apply. If Plaintiffs believe the Biological Opinion inadequately explained the treatment of "status unknown" detections or "floaters," they may make that argument on the administrative



HAGLUND KELLEY LLP
ATTORNEYS AT LAW
2177 SW BROADWAY
PORTLAND, OR 97201

record. What they may not do is expand the record with a post-decisional declaration that repackages their preferred treatment of those detections as evidence that the agencies failed to consider the issue.

### D. The Declaration Is Expert Opinion Designed to Convince the Court to Second-Guess the Agencies' Decisions.

Plaintiffs state that they do not offer the declaration to introduce post-decisional facts or a rival scientific opinion. Plfs.' Mot. at 2. But the declaration's stated purpose and substance show otherwise. It relies on Mr. Reeder's field experience, including observations extending beyond the agency decision, and uses that experience to contextualize and critique the agencies' assumptions. Even if some of the scientific sources discussed in the declaration predate the Biological Opinion, the declaration itself is an extra-record litigation document that synthesizes those sources into a new expert narrative. That is precisely the type of material the record-review rule is designed to exclude.

The Court should also reject Plaintiffs' attempt to use the declaration as a substitute for agency explanation. APA review evaluates the agency's stated rationale. Where the record contains the protocol, the Biological Opinion, and the cited scientific literature, the Court may assess whether the agency's explanation is sufficient without adding a new witness declaration. Supplementation would invite the parties to litigate dueling extra-record expert submissions rather than the legality of the challenged agency action on the record before the agencies.

Mr. Reeder's status as a former agency biologist does not change that analysis. Whatever his experience may be, the declaration is still a litigation submission prepared outside



HAGLUND KELLEY LLP
ATTORNEYS AT LAW
2177 SW BROADWAY
PORTLAND, OR 97201

the administrative process; it is not an agency explanation, a contemporaneous decisional document, or material the agencies relied on when issuing the challenged decision. Allowing supplementation on that basis would give extra-record evidence undue weight simply because the declarant formerly worked for an agency, rather than because the material is necessary for APA review.

Plaintiffs' motion would also create significant procedural problems. If the Court were to consider the Reeder Declaration as expert testimony, which it should not in this record-review case, then the provisions of the Federal Rules of Civil Procedure governing expert witnesses should apply. Plaintiffs cannot use a motion to supplement the administrative record to bypass the ordinary requirements for expert disclosures, expert reports, qualifications, and admissibility. FRCP 26(a)(2). That concern is highlighted by Mr. Reeder's apparent lack of qualifications to reach the scientific and biological conclusions his declaration advances. If Plaintiffs were permitted to offer those opinions as expert testimony, Defendants and Intervenors would need discovery into Mr. Reeder's expert file and qualifications, would need to take his deposition, and would need an opportunity to present rebuttal testimony. Mr. Reeder would also likely be subject to a *Daubert* motion challenging both his qualifications and the reliability of his opinions. Turning this case into a full-blown battle of the experts is antithetical to review under the APA, and the Court should reject Plaintiffs' attempt to insert expert opinion without providing the other parties with the proper opportunity to test the conclusions.

**E. The Agency Biologist's Testimony at the Equitable Preliminary Injunction Stage Has No Bearing on Whether to Allow Mr. Reeder's Expert Opinions at the Merits Stage.**

Plaintiffs' reliance on the preliminary-injunction hearing also fails because that proceeding served a different function than final merits review under the APA. A preliminary injunction requires the Court to make an expedited, predictive assessment of likelihood of success, irreparable harm, the balance of equities, and the public interest. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Courts have recognized that at the preliminary injunction stage, a party may present extra-record evidence designed to help the court understand those equitable considerations when doing so at the merits stage would be inappropriate. *See Earth Island Inst. v. Evans*, 256 F. Supp. 2d 1064, 1078 n.16 (N.D. Cal. 2003). That pragmatic evidentiary flexibility does not alter the rule that final APA review is confined to the administrative record absent a narrow and specifically justified exception.

For the same reason, any admission or use of biologist testimony at the preliminary-injunction stage has no bearing on whether the Reeder Declaration may be added to the record now. In fact, at the hearing, counsel for the Plaintiffs noted that anything the biologist said would be "post hoc rationalization." PI Hearing 87:11–12. In response, the Court properly noted that "I'm not going to entertain making this part of the - - part of the administrative record, but I think it would be helpful for me to understand some of the - - some of the background information." *Id.* at 16–20. The decision to entertain the biologist's testimony was entirely appropriate for the Court when considering the issues of the public interest and the threat of irreparable harm, but those issues are no longer before the Court, and Mr. Reeder's declaration is



HAGLUND KELLEY LLP
ATTORNEYS AT LAW
2177 SW BROADWAY
PORTLAND, OR 97201

unquestionably designed to address whether the agency violated the APA to begin with.

The question at this stage is not whether biological testimony was useful in a preliminary assessment of interim relief, but whether Plaintiffs have shown that extra-record material is necessary for the Court to conduct APA merits review. They have not. Plaintiffs' shallow "gotcha" treatment of the preliminary-injunction record would collapse the distinction between emergency equitable proceedings and record-based APA adjudication, effectively allowing parties to bootstrap preliminary-stage evidentiary rulings into merits-stage supplementation in closed-record cases.

## IV. CONCLUSION.

For the foregoing reasons, Defendant-Intervenors respectfully request that the Court deny Plaintiffs' Motion to Supplement the Administrative Record

DATED this 10th day of September, 2026.

**HAGLUND KELLEY LLP**

By: /s/ Christopher T. Griffith
Michael E. Haglund, OSB No. 772030
Julie A. Weis, OSB No. 974320
Christopher T. Griffith, OSB No. 154664

Attorneys for Defendant-Intervenor
Murphy Company

**CAROLLO LAW GROUP**

By: /s/ Dominic M. Carollo
Dominic M. Carollo, OSB No. 093057
Nolan G. Smith, OSB No. 215034
Audrey F. Boyer, OSB No. 106560

Attorneys for Defendant-Intervenor
Association of O&C Counties

**AMERICAN FOREST RESOURCE COUNCIL**

By: /s/ Sara Ghafouri
Sara Ghafouri, OSB No. 111021

Attorney for Defendant-Intervenor
American Forest Resource Council

**CERTIFICATE OF SERVICE**

I hereby certify that on the 10th day of September, 2026, I served the foregoing **DEFENDANT-INTERVENORS' JOINT RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION TO SUPPLEMENT THE ADMINISTRATIVE RECORD** with the Clerk of the Court using the CM/ECF system, which will send notification of this filing to the attorneys of record and all registered participants.

/s/ Christopher T. Griffith
Christopher T. Griffith