**UNITED STATES DEPARTMENT OF THE INTERIOR**
**Bureau of Land Management**
Grants Pass Field Office
2164 NE Spalding Ave,
Grants Pass OR, 97526

# DECISION RECORD 6
# for the Last Chance Forest Management Project

DOI-BLM-ORWA-M070-2022-0007-EA

November 2026

## INTRODUCTION

The Medford District Bureau of Land Management (BLM), Grants Pass Field Office (GPFO) has prepared the Last Chance Forest Management Project (LCFMP) Revised Environmental Assessment (REA), DOI-BLM-ORWA-M070-2022-0007-EA. The REA analyzed the effects of commercial and non-commercial treatments and associated activities on up to 11,686 acres of BLM-administered lands within a 56,888-acre project area. The REA is not-self executing and did not authorize any project activities or ground-disturbing actions. Rather, as explained in the REA (p. 4, section 1.3), BLM will implement the treatments analyzed in the REA through individual Decision Records authorizing treatments specified in each decision. Proposed treatments in this decision, Decision Record #6 (DR6), include commercial thinning, selection harvest, and activity fuels reduction. Associated activities include temporary road and landing construction, road renovation, timber haul, and road closure.

DR6 documents the decision to implement a portion of the forest management activities proposed and analyzed in the LCFMP REA.

## I. DECISION

Based on the analyses documented in the LCFMP REA, the Finding of No Significant Impact (FONSI), it is my decision to implement the following actions described and analyzed in Alternative 2 of the LCFMP REA. This Decision will implement actions in the locations described below and will include all associated Best Management Practices (BMP's) and Project Design Features (PDFs) as described in the REA (Appendix C). BMPs and PDFs are an integral part of the Project and were developed to avoid or reduce the potential for adverse impacts to resources. Where applicable, PDFs reflect BMPs as outlined in the 2016 (SWO ROD/RMP) (BLM 2016, Appendix C) and standard operating procedures.

The forest management activities authorized in this DR6 include:

- 255 acres of Harvest Land Base Uneven-Aged Timber Area selection harvest,
- 3 acres of Harvest Land Base Uneven-Aged Timber Area road construction right-of-way clearing,
- 12 acres of Late-Successional Reserve-Dry selection harvest,
- 1 acre of Late-Successional Reserve-Dry road construction right-of-way clearing,
- 20 acres of Outer and Middle Riparian Zone commercial thinning,

- 2 acres of roadside vegetation maintenance treatments,
- 293 acres of activity fuels treatments,
- 0.23 miles of temporary road construction,
- 16.33 miles of road renovation, and
- 16.56 miles of haul roads.

Authorized logging operations include ground-based and cable yarding systems. This Decision authorizes commercial timber harvest, road and landing construction, roadside vegetation maintenance, and follow-up activity fuels treatments on approximately 293 acres of BLM-administered lands in the following locations:

- T. 32 S., R. 4 W., Sec. 19, 29, 30,
- T. 32 S., R. 5 W., Sec. 23, 25, Willamette Meridian, Oregon.

For an overview of the location of commercial harvest units, road construction and road renovation, authorized in DR6, see the maps attached. Acres are rounded to the nearest half acre. The following summarizes the commercial treatment actions authorized by this Decision:

Table 1. Summary of Commercial Harvest by Treatment Type

| Commercial Treatments | Total Acres (Rounded) |
|---|---|
| Commercial Thin (CT) | 20 |
| Selection Harvest (SH) | 267 |
| Road Construction Right-of-Way Clearing (RW) | 4 |
| Roadside Vegetation Maintenance (RS) | 2 |
| **Total** | **293** |

Table 2. Commercial Timber Harvest Units by Timber Sale (Legend at Bottom of Table)

| Unit # | Acres | LUA | Logging System | Prescription (Type, Target BA and/or RD) | EA Alternative |
|---|---|---|---|---|---|
| 19-2 | 4 | HLB-UTA / RR-dry | C | SH / CT; 25% RD | 2 |
| 19-3 | 45 | HLB-UTA / RR-dry | GB/C | SH / CT; 20% RD | 2 |

| Unit # | Acres | LUA | Logging System | Prescription (Type, Target BA and/or RD) | EA Alternative |
|---|---|---|---|---|---|
| 19-3 RW | 1 | HLB-UTA | GB | RW, 0 BA | 2 |
| 23-6 | 33 | HLB-UTA | C | SH / CT; 30% RD | 2 |
| 23-6 RW | 1 | HLB-UTA | GB | RW, 0 BA | 2 |
| 25-2 | 80 | HLB-UTA / RR-dry | GB/C | SH / CT; 30% RD | 2 |
| 25-2 RW | 1 | HLB-UTA | GB | RW, 0 BA | 2 |
| 25-3 | 35 | HLB-UTA | GB | SH / CT; 45% RD | 2 |
| 25-5 | 8 | LSR-dry | GB/C | SH / CT; 38% RD | 2 |
| 25-5 RW | 1 | HLB-UTA / LSR-dry | GB | RW, 0 BA | 2 |
| 29-1 | 12 | HLB-UTA | C | SH / CT; 22% RD | 2 |
| 29-2 | 12 | HLB-UTA | C | SH / CT; 32% RD | 2 |
| 29-3 | 45 | HLB-UTA / RR-dry | GB/C | SH / CT; 23% RD | 2 |
| 30-2 | 13 | HLB-UTA / RR-dry | GB/C | SH / CT; 24% RD | 2 |
| RS | 2 | DDR-roads | GB | RS | 2 |
| **Total** | **293** | | | | |

<table>
<tr><th>Unit #</th><th>Acres</th><th>LUA</th><th>Logging System</th><th>Prescription (Type, Target BA and/or RD)</th><th>EA Alternative</th></tr>
<tr><td colspan="3"><u>Land Use Allocation (LUA)</u><br><br>HLB-UTA – Uneven-Aged Timber Area<br>LSR-Dry – Late-Successional Reserve-Dry<br>RR-Dry – Riparian Reserve-Dry Outer and Middle Zone<br>DDR-Roads – District Designated Reserve – Roads</td><td><u>Logging System</u><br><br>GB – Ground-based<br>C – Cable skyline</td><td colspan="2"><u>Prescription Types & Terms</u><br><br>CT – commercial thinning<br>SH – selection harvest<br>RW – clearing for road construction right-of-way<br>RS – roadside vegetation maintenance<br>BA – basal area (sq.ft./acre)<br>RD – relative density post-harvest</td></tr>
</table>

The following road construction, road renovation, road decommissioning, and timber haul are authorized by this Decision. For a visual overview of locations of the road construction, renovation, and timber haul, see the attached maps below. Road lengths are rounded to the nearest tenth of a mile.

- Temporary road construction of approximately 0.23 miles in:
  - T. 32 S. R. 04 W. Sec. 19, 29, 32.
  - T. 32 S. R. 05 W. Sec. 23, 25.

- Road renovation of approximately 12.33 miles in:
  - T. 32 S. R. 04 W. Sec. 19, 20, 29, 30, 32.
  - T. 32 S. R. 05 W. Sec. 23-26.

- Hauling of timber on approximately 16.56 miles (of which 8.3 miles would be available for wet season haul; an additional 5.3 miles would be available for wet season haul after contract rocking is complete; and an additional 2.96 miles would be available for wet season haul if purchaser chooses to add adequate rock to the road) of BLM and privately administered roads in:
  - T. 32 S. R. 04 W. Sec. 19, 20, 29, 30, 32.
  - T. 32 S. R. 05 W. Sec. 23-26.

- BLM determined that 1 segment of road will move forward as decommission (long-term closure) for an approximate total length of 0.15 miles. This road segment is located in the following location:
  - T. 32 S. R. 04 W. Sec. 30.

Table 3. Treatments Authorized to Date in Existing Last Chance DRs by Acre.

| Decision Record | Commercial Treatments | Hazardous Fuels Reduction Treatments | Treatment Acres in DR That Overlap with Treatment Acres in a Previously Issued LCFMP DR | Total New Treatment Footprint* Acres Authorized in DR |
|---|---|---|---|---|
| Revised DR #1 | 427 | 0 | N/A | 427 |
| DR #2 | 0 | 5,081 | 24 (with DR #1) | 5,057 |
| DR #3 | 383 | 0 | 5 (with DR #2) | 378 |
| DR #4 | 421 | 708 | 77 (with DR #2) | 1,052 |
| DR #5 | 652 | 0 | 248 (with DR #2) | 404 |
| DR #6 | 293 | 0 | 120 (with DR #2) | 173 |
| **TOTAL** | **2,176** | **5,789** | **474** | **7,491** |

*A Footprint Acre may have multiple overlapping treatments occurring on it but was only analyzed in the REA as 1 acre. This column in the tracking table accounts for the new footprint acres by DR that were not already authorized in a previous DR.

The BLM is tracking acres by NSO habitat type being treated in each Decision Record ensuring that the acres treated and the associated effects do not exceed what is disclosed in the associated Biological Opinion.

Table 4. Total NSO Habitat Acres Treated to Date in Existing Last Chance DRs.

| **All Treatments** | | | |
|---|---|---|---|
| **Treatment Acres by Habitat Effect Type** | **Acres in Biological Opinion** | **Acres Authorized in DRs 1 - 6** | **Remaining Acres in Biological Opinion Not Authorized in DRs** |
| NRF Modified | 2,252 | 1,861 | 391 |
| NRF Downgraded | 0 | 0 | 0 |
| NRF Removed | 3,662 | 1,991 | 1,671 |
| Dispersal-only Modified | 1,731 | 1,373 | 358 |

| | | | |
|---|---|---|---|
| Dispersal-only Removed | 2,508 | 1,334 | 1,174 |
| Treatments in Non-Habitat (No Effect)* | 1,934* | 1,175* | 759* |
| **GRAND TOTAL** | **12,087** | **7,734** | **4,353** |
| **Critical Habitat Only** | | | |
| **Treatment Acres by Habitat Effect Type** | **Acres in Biological Opinion** | **Acres Authorized in DRs 1 - 6** | **Remaining Acres Not Authorized in Biological Opinion** |
| NRF Modified | 1,295 | 1,090 | 205 |
| NRF Downgraded | 0 | 0 | 0 |
| NRF Removed | 791 | 328 | 463 |
| Dispersal-only Modified | 671 | 508 | 163 |
| Dispersal-only Removed | 336 | 147 | 189 |
| Treatments in Non-Habitat (No Effect)* | NA* | 416* | NA* |
| **GRAND TOTAL** | **3,093** | **2,488** | **1,021** |

* No effect treatments are identified in the Biological Assessment and Biological Opinion, but are not carried forward for further analysis and are not split out for critical habitat analysis in the Biological Opinion because those treatments do not present any pathway, individually or collectively when considered with the entirety of the project, for effects to the species or its critical habitat. Acres in non-habitat are not subtracted from the total allowed.

## II. COMPLIANCE AND CONFORMANCE

The BLM signed the Southwestern Oregon Record of Decision and Resource Management Plan ROD/RMP (SWO ROD/RMP) on August 5, 2016. The BLM designed all of the alternatives for the LCFMP to conform with the management direction in the SWO ROD/RMP, which addresses how the BLM will comply with applicable laws, regulations, and policies in western Oregon including, but not limited to the: Oregon and California Railroad (O&C) Act, Federal Land Policy and Management Act (FLPMA), Endangered Species Act (ESA), National Environmental Policy Act (NEPA), National Historic Preservation Act (NHPA), Clean Air Act, and Clean Water Act.

Qualifying 1850 Tree Retention

The 2016 RMP directs the BLM to retain all live trees greater than or equal to 40 inches diameter at breast height ("dbh") and that BLM identifies as having been established prior to 1850

("qualifying pre-1850 trees") in LSR and RR LUA's (2016 SWO RMP pp. 71, 72, 76). If any qualifying pre-1850 tree is fallen for safety or operational reasons (right-of-way, yarding corridors, skid trails, and/or road construction, maintenance and/or improvement), it will be retained in the stand or moved to the adjacent stand as down woody material (SWO RMP pp. 71-72, 75-76). BLM staff used their best efforts to mark all trees in this project that are greater than or equal to 40 inches in dbh with orange or yellow paint for retention. This marking is consistent for all trees reserved from cutting regardless of their age. If any such tree was inadvertently missed by marking contractors, or if a qualifying tree needs to be cut for operations including within the road construction right-of-way clearing limits, express contract stipulations require that all trees 40-inches and greater are contractually reserved if they were established prior to 1850. BLM routinely inspects to ensure contractor compliance with these contract stipulations and maintains authority to suspend or cancel contracts to ensure compliance.

In HLB-UTA and LSR-dry the 2016 SWO RMP directs the BLM to retain all live qualifying dominant Douglas-fir and pine trees that are equal to or greater than 36 inches dbh and established prior to 1850; and madrone, bigleaf maple, and oak that are greater than 24 inches dbh, except where falling is necessary for safety or operational reasons (2016 SWO RMP p. pp. 68, 74). The SWO RMP also requires retaining any cut qualifying pre-1850 Douglas fir and pine trees, along with madrone, bigleaf maple and oak trees in the stand (2016 SWO RMP pp. 68, 74) either in-stand or in adjacent stand. BLM staff used their best efforts to mark all trees in this project that are greater than or equal to 36 inches in dbh with orange or yellow paint for retention. This marking is consistent for all trees reserved from cutting regardless of their age. If any such tree was inadvertently missed by marking contractors, or if a qualifying tree needs to be cut for operations including within the road construction right-of-way clearing limits, express contract stipulations require that all trees 36-inches and greater are contractually reserved if they were established prior to 1850. BLM routinely inspects to ensure contractor compliance with these contract stipulations and maintains authority to suspend or cancel contracts to ensure compliance.

For this project, the BLM identified potentially qualifying pre-1850 trees during project planning and layout, using LiDAR and stand exam plot data for determining a general location and identification of potential trees, and followed up with field verification using diameter tape and/or an increment borer for individual tree identification. The BLM identified these trees in the field by recording a tally for each qualifying pre-1850 tree along with other reserve trees in a field book, marking the trees with orange/yellow paint in a continuous band around the tree bole, and in the timber sale contract by designating them as reserved from cutting and sale in Section 43 of the Contract for 5450-003/004 Contract for Sale of Timber and Other Wood Products: Scale Sale and additional special provision language in Section 44 for reinforcement during project implementation.

The BLM has not pre-designated cutting qualifying pre-1850 trees based on operational reasons prior to project implementation in the Last Chance Forest Management Project. During implementation, the operator will identify any qualifying pre-1850 tree for BLM Authorized Officer's (AO) approval to cut that is necessary to facilitate operations for right-of-way clearing, yarding corridors, skid trails, and/or road construction, maintenance and/or improvement within a delineated area or on a tree-by-tree basis and based on specific site conditions encountered in the field. The operator may also cut a qualifying 1850 tree for safety.

- Operational - If an operator identifies a qualifying pre-1850 tree that requires removal for operational necessity, the operator must first obtain BLM review and approval before felling the tree, and, as required by the RMP, leave any such felled trees in the stand or adjacent stand as downed wood. Per the RMP, BLM will approve felling of a reserved qualifying pre-1850 tree for operational necessity only if "no alternative harvesting method is economically viable or practically feasible." (RMP/ROD, p. 74).

- Safety - The purchaser may fell and buck a qualifying pre-1850 tree prior to BLM approval. The qualifying 1850-tree must be left in the stand that it is felled in or the adjacent stand. The operator must determine the qualifying 1850-tree to be an imminent danger or imminent safety concern to its employees, the public, or Government employees, in accordance with applicable provisions of Federal, State, and local safety laws, codes, and regulations. The operator must notify the BLM Authorized Officer (AO) if a qualifying pre-1850 tree required felling for safety reasons and the BLM AO shall document these occurrences in an inspection report. Accordingly, BLM approval of any qualifying pre-1850 tree requiring felling for safety necessity is not pre-determined at the time of sale preparation or decision record issuance.

In accordance with BLM policy, during active timber felling and yarding operations, the Grants Pass Field Office designated AO or AO's representative routinely inspects the project area, ensuring compliance with the timber sale contract terms, including unauthorized cutting of reserve trees. Contract area inspection frequencies are based on operation flows. In the event of a contract term violation that is unable to find resolution at the lowest level, the BLM retains authority to suspend or cancel the contract and/or pursue trespass damages depending on the site-specific conditions. BLM develops timber cruising estimates or preliminary volume appraisals before auctioning timber sales and uses those estimates for appraisal and bidding purposes and to evaluate how project alternatives meet the project's Purpose and Need of contributing towards the District's annual ASQ volume target in the HLB and how the project alternatives meet the project's Purpose and Need of contributing towards the District's decadal treatment acre target in the LSR-Dry. The BLM offers timber sales "as is" and the BLM does not guarantee estimated timber volume. Prospective bidders may conduct their own cruises before bidding if they choose. Importantly, BLM's volume estimates for each timber sale unit in this project, and the project's total volume, do not include the volume from any qualifying pre-1850 trees, which the RMP directs to be reserved from commercial harvest and retained on site if cutting is necessary. Achieving the project's volume estimates does not depend on the cutting of or volume from any qualifying pre-1850 trees. Through its timber sale planning process, BLM excludes any stands from the project if the stand density and characteristics already meet the desired future condition and management objectives for the land use allocation where treatment is being considered. Accordingly, BLM does not assume harvesting any qualifying pre-1850 trees to achieve projected timber sale volume. Rather, the timber sale structure, marking process, and implementation requirements are specifically designed to allow commercial harvest to proceed while retaining qualifying pre-1850 trees.

The Last Chance Forest Management Project contains qualifying pre-1850 trees that have been or will be marked as "reserved". Because this project incorporates the applicable RMP requirements

to retain either in-stand or in an adjacent stand qualifying pre-1850 trees, and because BLM implements the aforementioned measures above to ensure identification and retention of qualifying trees, and because BLM retains continuing authority to identify, reserve, monitor, and enforce protection of such trees during implementation, and BLM does not authorize the sale of- or removal from the sale area- qualifying trees that may need to be felled for operational or safety reasons, BLM determined that compliance with the RMP retention standard would occur through project design, layout, contract administration, and implementation monitoring therefore the BLM has met the RMP requirements for preserving qualifying pre-1850 trees with provisions for operational and safety needs to conduct timber harvest and associated activities authorized in this Decision Record.

## III. PUBLIC INVOLVEMENT

The GPFO mailed public scoping letters in December of 2020 to adjacent landowners, permittees, agencies, and other interested citizens. The BLM received five comments during the 30-day public scoping period. On July 15, 2021, the GPFO mailed a public scoping letter to interested mining claimants. The BLM did not receive any comments. In August of 2022, the Rum Creek Fire ignited via lightning strike in the northwestern portion of the GPFO. This fire did not burn within the LCFMP. However, the BLM put project development on hold while the agency worked to manage the fire and conduct post-fire Emergency Stabilization and Rehabilitation (ESR). In January of 2023, the BLM resumed planning the LCFMP. On February 22, 2023, the BLM mailed scoping letters to tribal governments including the Cow Creek Band of Umpqua, Confederated Tribes of Grand Ronde, and the Confederated Tribes of the Siletz Indians. The BLM did not receive any comments. On July 8, 2024, the BLM published a draft Environmental Assessment (EA) on ePlanning for a 30-day public comment period and received 917 comments. The GPFO posted a revised draft of the EA for public review and comment on BLM's National NEPA Register (ePlanning) for an additional 14-day public review comment period from March 14th to March 28th of 2025. The BLM's responses to these comments are located on eplanning as Attachment 2 and incorporated into the final Revised EA where needed.

## IV. RATIONALE FOR DECISION

The rationale for my Decision is based on the consideration and evaluation of how well the Purpose and Need are met, public input, and the associated environmental consequences of implementing or not implementing the LCFMP, as analyzed in the REA, and documented in the FONSI. My Decision to authorize Alternative 2, as described in the Decision section above, best fits the Purpose and Need for action as presented in the REA, while providing protection for resources, including ESA listed and Special Status species.

The REA analyzed four alternatives for the management of the BLM-administered lands in the Project Area, a No Action Alternative (Alternative 1), and three action alternatives (Alternatives 2, 2a and 3). The action alternatives vary in number of acres treated per year, areas that can be treated, commercial and non-commercial vegetation treatment types, and hazardous fuels reduction treatments. All action alternatives were designed to meet the Purpose and Need for the project; the degree to which each alternative meets this provides the basis for my Decision.

Alternative 1 would not meet the Purpose and Need for this project. Under the No Action Alternative, no actions would be taken at this time to produce timber to contribute to the attainment

of the declared ASQ, forest stands would remain in an overly dense state making them less resilient to disturbance, and hazardous fuels would continue to accumulate.

A Finding of No Significant Impact (FONSI) explains that the Selected Alternative that I have chosen has been analyzed in an Environmental Assessment and has been found to have no significant impacts, thus an Environmental Impact Statement is not required and will not be prepared.

The BLM is making this forest management decision effective on the date this decision is posted on e-planning. After this date, the BLM will proceed expeditiously with the timber sale contracting process.

## V. RIGHT OF APPEAL:

This decision may be appealed to the Interior Board of Land Appeals (IBLA), Office of Hearings and Appeals, in accordance with the regulations contained in 43 CFR Part 4. The notice of appeal must be filed no later than 30 days after the date of receiving notice of this decision under 43 CFR 403(c)(2). Any notice of appeal must be filed with the IBLA and must include a copy of the decision being appealed, a statement of standing, and a statement of timeliness. If you wish to file a petition for a stay of the effectiveness of this decision during the time that your appeal is being reviewed by the Board, the petition for a stay must show sufficient justification based on the following criteria at 43 CFR 4.405(b). The appellant must serve a copy of the notice of appeal and any accompanying documents on the office of the officer who made the decision, each person or entity named in the decision, and the appropriate Office of the Solicitor at the time of filing with IBLA (see 43 CFR 4.403(b); 4.407(b)). Parties must also serve the Office of the Regional Solicitor at 601 SW 2nd Ave, Suite 1950, Portland, OR 97204-3172. Service on a party known to be represented by an attorney or other designated representative must be made on the representative. If a statement of reasons for the appeal is not included with the notice of appeal, it must be filed within 30 days after the record on appeal is filed with the IBLA. Failure to file a statement of reasons within the time required will subject the challenged decision to summary affirmance (see 43 CFR 4.412(a)).

### Effective Date of Decision

This Decision Record is a forest management decision under 43 Code of Federal Regulations Part 5003.2. The BLM is making this forest management decision effective immediately. After the signed date, the BLM will proceed expeditiously with the timber sale contracting process.

## VI. APPROVAL

JUSTIN KELLY Digitally signed by JUSTIN KELLY
Date: 2026.11.13 08:43:39 -08'00'

Field Manager

Grants Pass Field Office

# Last Chance Forest Management Project
## Decision Record No. 6

Bureau of Land Management
Medford District - Grants Pass FO
2164 NE Spalding Ave.
Grants Pass, Oregon 95726
541-471-6500

Medford District BLM




"No warranty is made by the Bureau of Land Management as to the accuracy, reliability, or completeness of this map or the data displayed for individual use or aggregate use with other data."

# Last Chance Forest Management Project
## Decision Record No. 6

Bureau of Land Management
Medford District - Grants Pass FO
2164 NE Spalding Ave.
Grants Pass, Oregon 95726
541-471-6500

Medford District BLM




Last Chance Project Area
Buckhorn Draw Units
Cable Yarding
Ground Based Yarding
Roadside Units
Haul Route Renovation
Haul Route Temp. Construction
BLM Road
HLB-UTA
RR-dry
Bureau of Land Mgmt.
Private




0 0.2 0.5 Miles

"No warranty is made by the Bureau of Land Management as to the accuracy, reliability, or completeness of this map or the data displayed for individual use or aggregate use with other data."

# Last Chance Forest Management Project
## Decision Record No. 6

Bureau of Land Management
Medford District - Grants Pass FO
2164 NE Spalding Ave.
Grants Pass, Oregon 95726
541-471-6500







Last Chance Project Area
Buckhorn Draw Units
Cable Yarding
Ground Based Yarding
Haul Route Renovation
Haul Route Temp. Construction
BLM Road
HLB-UTA
RR-dry
Bureau of Land Mgmt.
Private

"No warranty is made by the Bureau of Land Management as to the accuracy, reliability, or completeness of this map or the data displayed for individual use or aggregate use with other data."

0 0.2 0.3 Miles

N



# Last Chance Forest Management Project
# Decision Record No. 6

Bureau of Land Management
Medford District - Grants Pass FO
2164 NE Spalding Ave.
Grants Pass, Oregon 95726
541-471-6500




"No warranty is made by the Bureau of Land Management as to the accuracy, reliability, or completeness of this map or the data displayed for individual use or aggregate use with other data."



# Last Chance Forest Management Project
# Decision Record No. 6

Bureau of Land Management
Medford District - Grants Pass FO
2164 NE Spalding Ave.
Grants Pass, Oregon 95726
541-471-6500

Medford District BLM

T32S R05W




| | | |
|---|---|---|
| Last Chance Project Area | Roadside Units | County Route |
| Buckhorn Draw Units | Haul Route Renovation | HLB-UTA |
| Cable Yarding | Haul Route Temp. Construction | Bureau of Land Mgmt. |
| Ground Based Yarding | BLM Road | Private |

"No warranty is made by the Bureau of Land Management as to the accuracy, reliability, or completeness of this map or the data displayed for individual use or aggregate use with other data."

0 0.2 0.5 Miles

